**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHAN JOHNY SUMOLANG; BERAWATI NOTOREDJO, *Petitioners*, <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 08-73164 <br><br> Agency Nos. A095-295-985 A095-295-986 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 5, 2013—Pasadena, California

Filed July 25, 2013

Before: Richard A. Paez and Paul J. Watford, Circuit
Judges, and Matthew F. Kennelly, District Judge.[*]

Opinion by Judge Watford

---

[*] The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

# SUMMARY[**]

## Immigration

The panel granted in part a petition for review of the Board of Immigration Appeals' decision denying asylum, withholding of removal, and protection under the Convention Against Torture, to a Chinese Christian native and citizen of Indonesia.

The panel held that due to disputed issues of fact it lacked jurisdiction to review petitioner's contention that the untimeliness of her asylum application should be excused due to extraordinary circumstances. The panel further held that petitioner's delay of several years in filing her application after an outbreak of anti-Chinese violence in 1998 was not reasonable, and that substantial evidence supported the Board's determination that anti-Chinese violence between 1999 and 2002 did not constitute changed country conditions to excuse her untimely application.

The panel held that the Board erred by failing to taking into account petitioner's infant daughter's death in evaluating whether she had suffered past persecution herself. The panel explained that harm to a child can amount to past persecution of the parent when that harm is, at least in part, directed against the parent on account of the parent's race, religion, nationality, membership in a particular social group, or political opinion.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that substantial evidence supported the denial of CAT protection, but remanded for the Board to reconsider the denial of withholding of removal, giving full weight to evidence of petitioner's daughter's death.

## COUNSEL

Gihan L. Thomas (argued) and Kelley L. Costello (argued), Law Offices of Gihan Thomas, Los Angeles, California, for Petitioners.

Jessica E. Sherman (argued), Trial Attorney; Tony West, Assistant Attorney General; Richard M. Evans, Assistant Director; Marshall T. Golding, Attorney, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

## OPINION

WATFORD, Circuit Judge:

Can a parent applying for asylum or withholding of removal show that she has been persecuted based on suffering or harm inflicted on her child? That question arises here because the strongest evidence supporting the claims of the petitioner, Berawati Notoredjo, involved the death of her three-month-old daughter. In ruling that Ms. Notoredjo had not shown past persecution, the immigration judge (IJ) refused to give any weight to that evidence. The IJ framed the legal principle guiding his decision in these terms: "the alien cannot claim persecution as to a relative and, by virtue of that persecution, assert that he himself was persecuted

thereby." We believe this legal principle was misapplied in Ms. Notoredjo's case and grant in part her petition for review.

**I**

Ms. Notoredjo is a native and citizen of Indonesia who is Christian and of Chinese descent, a minority group that has faced a long history of violence and discrimination in Indonesia. *See Sael v. Ashcroft*, 386 F.3d 922, 925–27 (9th Cir. 2004). Because of her race and religion, Ms. Notoredjo was repeatedly discriminated against at school, heckled with anti-Chinese slurs as she walked to school, and harassed and groped by Muslim men when she rode public transportation. On one occasion two Muslim men accosted her on the street and robbed her; when she attempted to report the incident to the police, the officers were rude and refused to help solely because she is Chinese.

In December 1996, Ms. Notoredjo and her husband, Johan Sumolang, who is also Christian, brought their seriously ill baby daughter Monicha to a public hospital for treatment. Upon arrival, the nurse who registered them said, "Oh, you are Christians," and told them they would have to wait because the doctor was busy. A Muslim doctor later asked Ms. Notoredjo for a bribe and threatened not to treat Monicha as a "priority." His request rebuffed, the doctor left Monicha unattended. When Monicha's condition deteriorated due to the long wait, Ms. Notoredjo's husband confronted one of the doctors and told him they wanted to know what was wrong with Monicha right away. The doctor replied, "You Chinese don't know your place. You will have to wait until I'm free." He further warned, "If you don't behave yourself, I'll call the police and throw you out." By the time a doctor finally saw Monicha, it was too late to save her. The doctor refused to

give any explanation for the cause of death, but Ms. Notoredjo believes Monicha died because she failed to receive prompt medical attention. Because the IJ did not make an adverse credibility determination, we accept Ms. Notoredjo's account of these events as true. *See Benyamin v. Holder*, 579 F.3d 970, 974 (9th Cir. 2009).

In May 1997, Ms. Notoredjo and her husband came to the United States as tourists. Although they intended to return to Indonesia, they decided to extend their stay in the United States after family members warned them that it might not be safe to return. Those warnings proved accurate, for in May 1998 widespread anti-Chinese violence erupted in Indonesia, leaving more than one thousand people dead. *Sael*, 386 F.3d at 925–26. After their visas expired in May 1998, Ms. Notoredjo and her husband remained in the United States without lawful status.

In 2002, Ms. Notoredjo's husband, Mr. Sumolang, filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, listing Ms. Notoredjo as a derivative beneficiary. Ms. Notoredjo later filed her own application requesting the same relief. After a hearing at which both Ms. Notoredjo and Mr. Sumolang testified, the IJ denied relief and ordered them removed to Indonesia unless they voluntarily departed within sixty days. The Board of Immigration Appeals (BIA) dismissed their appeal. This opinion addresses only Ms. Notoredjo's claims; we address Mr. Sumolang's claims in a separate unpublished memorandum.

**II**

We begin with the BIA's rejection of Ms. Notoredjo's asylum claim, which requires only brief discussion. Because Ms. Notoredjo filed her application more than one year after her arrival in the United States, she had to show either "changed circumstances" materially affecting her eligibility for asylum or "extraordinary circumstances" excusing her failure to file within the one-year deadline. 8 U.S.C. § 1158(a)(2)(B), (D). The BIA adopted the IJ's determination that neither of these exceptions applies. As to the extraordinary-circumstances exception, we lack jurisdiction to review the BIA's ruling because it rests on the IJ's resolution of an underlying factual dispute. *See Gasparyan v. Holder*, 707 F.3d 1130, 1133–34 (9th Cir. 2013). The IJ determined that Ms. Notoredjo's filing delay was caused by her ignorance of the one-year filing deadline, not—as Ms. Notoredjo claimed—by the psychological trauma she experienced in the wake of Monicha's death.

As to the changed-circumstances exception, we have jurisdiction to review the BIA's ruling because it turns on undisputed facts—the outbreak of anti-Chinese violence in May 1998. *See Vahora v. Holder*, 641 F.3d 1038, 1042 (9th Cir. 2011). Ms. Notoredjo argues that this outbreak of violence constitutes "changed circumstances" that materially affected her and her husband's eligibility for asylum, and thus excused their late filing in 2002. *See Vahora*, 641 F.3d at 1043–44. While those events may have allowed Ms. Notoredjo to file an application within a "reasonable period" after learning of the violence in May 1998, *see* 8 C.F.R. § 1208.4(a)(4)(ii), they do not excuse her failure to file the application until several years had passed. *See Tamang v. Holder*, 598 F.3d 1083, 1091 (9th Cir. 2010). Ms. Notoredjo

also argues that anti-Chinese violence in Indonesia between 1999 and 2002 constitutes changed circumstances, but substantial evidence supports the IJ's conclusion that such violence was at most no different in degree from the violence that had been ongoing when Ms. Notoredjo left Indonesia in 1997.

## III

We turn next to the BIA's rejection of Ms. Notoredjo's claim for withholding of removal. To succeed on this claim, Ms. Notoredjo had to prove that her life or freedom would be threatened in Indonesia because of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). She could meet that burden by proving that she suffered past persecution in Indonesia on account of one of the five protected grounds, which would give rise to a rebuttable presumption that she is entitled to withholding of removal. 8 C.F.R. § 1208.16(b)(1)(i). Or Ms. Notoredjo could prove that it is more likely than not that she would face such persecution in the future if she were removed to Indonesia. 8 C.F.R. § 1208.16(b)(2); *INS v. Stevic*, 467 U.S. 407, 429–30 (1984).

The BIA held that Ms. Notoredjo failed to prove entitlement to withholding of removal on either ground. The BIA concluded that the incidents of discrimination and harassment Ms. Notoredjo experienced did not rise to the level of past persecution, and that she had not demonstrated an individualized risk of future persecution as required by *Lolong v. Gonzales*, 484 F.3d 1173 (9th Cir. 2007) (en banc). In reaching these conclusions, the BIA accorded no weight to the events surrounding Monicha's death, adopting the IJ's view that, even if Monicha had been the victim of

persecution, that did not mean Ms. Notoredjo herself had been persecuted. The BIA stated: "[T]he fact that the respondent's daughter was a victim of poor medical attention, whether due to ethnicity or religion, does not establish persecution to the respondent herself."

The BIA and the IJ erred as a legal matter in refusing to consider the evidence concerning Monicha's death. It is true, as the IJ observed, that withholding of removal is a purely personal remedy, in contrast to asylum. Under the asylum statute, spouses and children can claim asylum as derivative beneficiaries of the principal alien's application. 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.21. The withholding of removal statute makes no such allowance for derivative beneficiaries. *See* 8 U.S.C. § 1231(b)(3); *Ali v. Ashcroft*, 394 F.3d 780, 782 n.1 (9th Cir. 2005). But Ms. Notoredjo was not seeking derivative relief here. She sought withholding of removal based on her own persecution, not the persecution of someone else.

Our precedent, as well as precedent from other circuits, supports Ms. Notoredjo's reliance on the harm inflicted on her infant daughter as evidence of past persecution. Harm to a child can amount to past persecution of the parent when that harm is, at least in part, directed against the parent "on account of" or "because of" *the parent's* race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A). Thus, we have held that parents proved past persecution based in part on physical attacks against their half-Sikh, half-Hindu child, when the attacks were part of a campaign of persecution directed against the parents because of their inter-faith marriage. *See Maini v. INS*, 212 F.3d 1167, 1175–76 (9th Cir. 2000); *see also Mashiri v. Ashcroft*,

383 F.3d 1112, 1120 (9th Cir. 2004); *Rodriguez-Matamoros v. INS*, 86 F.3d 158, 160 (9th Cir. 1996). The First Circuit has similarly held that the kidnapping, beating, and rape of a father's children, which were "specifically designed to send a message" to the father on account of the father's political opinions, "were clearly part of the persecution of him." *Precetaj v. Holder*, 649 F.3d 72, 76 (1st Cir. 2011); *see also Flores v. Holder*, 699 F.3d 998, 1003 (8th Cir. 2012); *Jiang v. Gonzales*, 500 F.3d 137, 141 (2d Cir. 2007); *Tamas-Mercea v. Reno*, 222 F.3d 417, 425 (7th Cir. 2000).

Ms. Notoredjo's case fits comfortably within this line of precedent. Her account of what transpired at the hospital makes clear that the doctors and nurses deliberately ignored Monicha's medical needs because her parents were Christian and her mother was Chinese. The hospital staff's delay in administering medical care to Monicha was, at least in part, directed against Ms. Notoredjo and her husband because of *her* race and *their* religion. Indeed, the anti-Christian motivation for the hospital staff's actions can only be understood as directed against Monicha's parents, since a three-month-old infant lacks the capacity to adopt a religious faith of her own. It is fair to say that although the hospital staff's actions inflicted harm most immediately on Monicha, those actions were "designed to send a message" to Monicha's parents, *Precetaj*, 649 F.3d at 76, and were calculated to inflict suffering on them through their child.

Because the BIA treated Ms. Notoredjo as credible, there is no basis to exclude from consideration her testimony that the staff of a public hospital deliberately delayed administering medical treatment to Monicha on account of Ms. Notoredjo's race and religion. This evidence is directly relevant to whether Ms. Notoredjo suffered past persecution,

and may also be relevant to whether she has shown an individualized likelihood of future persecution. *See Sael*, 386 F.3d at 927. We remand for the BIA to reconsider Ms. Notoredjo's request for withholding of removal giving full weight to the evidence concerning Monicha's death.

## IV

Finally, we uphold the BIA's determination that Ms. Notoredjo is not entitled to protection under the Convention Against Torture, as that determination is supported by substantial evidence. The events described in Ms. Notoredjo's declaration and testimony do not establish that she is more likely than not to be tortured if she returns to Indonesia. *See* 8 C.F.R. § 208.16(c)(2); *Nuru v. Gonzales*, 404 F.3d 1207, 1216, 1221 (9th Cir. 2005).

**PETITION FOR REVIEW GRANTED in part, DENIED in part, DISMISSED in part, and REMANDED.**

**Costs awarded to the petitioners.**