**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 5 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VIRGILIO ALVARO ARCOS, | No. 18-71552 |
| Petitioner, | Agency No. A205-321-339 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 2, 2019
San Francisco, California

Before: FERNANDEZ and PAEZ, Circuit Judges, and CHOE-GROVES,** Judge.

Virgilio Alvaro Arcos, a native and citizen of Mexico, petitions for review

of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an

immigration judge's ("IJ") decision denying his application for asylum and

withholding of removal. Our jurisdiction is governed by 8 U.S.C. § 1252. We

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jennifer Choe-Groves, Judge for the United States
Court of International Trade, sitting by designation.

review the agency's legal determinations de novo, and we review its factual findings for substantial evidence. Singh v. Holder, 656 F.3d 1047, 1051 (9th Cir. 2011). We dismiss in part and deny in part the petition for review.

We lack jurisdiction to review the agency's ruling that the extraordinary-circumstances exception to the one-year deadline for filing an asylum application, set forth at 8 U.S.C. § 1158(a)(2)(D), did not apply. We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review questions of law. See Dhital v. Mukasey, 532 F.3d 1044, 1049 (9th Cir. 2008) (holding that court had jurisdiction to review agency's application of extraordinary-circumstances exception to undisputed facts). Here, however, the agency's ruling turned on its resolution of disputed facts concerning the effects of Alvaro Arcos's mental health diagnosis and intellectual disability. See Sumolong v. Holder, 723 F.3d 1080, 1082 (9th Cir. 2013) (finding no jurisdiction to review BIA's ruling that petitioner failed to meet extraordinary-circumstances exception where ruling rested on IJ's resolution of underlying factual dispute regarding reason for filing delay). We dismiss the petition for review in part.

As to withholding of removal, substantial evidence supports the agency's finding that Alvaro Arcos did not show the Mexican government was unable or unwilling to protect him from persecution. See Guo v. Sessions, 897 F.3d 1208, 1212–13 (9th Cir. 2018) (applicant must show that persecution was by the

government or by forces the government was unable or unwilling to control). The record shows that indigenous citizens are marginalized and discriminated against in Mexico, but it does not compel the conclusion that private persecution is widespread and well known but not controlled by the government. See Rahimzadeh v. Holder, 613 F.3d 916, 922 (9th Cir. 2010); Wakkary v. Holder, 558 F.3d 1049, 1059 (9th Cir. 2009) (persecution is an extreme concept and is not the same as discrimination). We deny the petition for review as to Alvaro Arcos's claim for withholding of removal.

**PETITION FOR REVIEW DISMISSED in part and DENIED in part.**



*Arcos v. Barr*, No. 18-71552
Paez, J., concurring in part and dissenting in part.

*Asylum Claim*

I disagree with the majority that we lack jurisdiction to review the agency's ruling regarding whether the extraordinary-circumstances exception excuses Alvaro Arcos's failure to meet the one-year asylum application deadline. I would, however, deny the petition on this claim because Alvaro Arcos unreasonably delayed filing his application.

We may exercise jurisdiction to review whether Alvaro Arcos established extraordinary circumstances to excuse his delay in filing a timely asylum application because that issue is a mixed question of law and fact. *See Husyev v. Mukasey*, 528 F.3d 1172, 1178–81 (9th Cir. 2008). In my view, the material underlying facts are not disputed. Dr. Caroline Salvador Moses[1] diagnosed Alvaro Arcos with borderline intellectual functioning, post-traumatic stress disorder, alcoholism, and major depressive disorder. The government concedes that the parties do not dispute the "existence of [Alvaro Arcos's] psychological and cognitive conditions[.]" Government Br. at 22.

---

[1] The Immigration Judge ("IJ") found that Dr. Moses was a credible witness and accorded her testimony "full evidentiary weight." Tr. at 92–93. The government did not object to her qualifications as an expert in the determination of legal disability and neuropsychology. *See id.*

1

At issue, therefore, is only whether Alvaro Arcos "was so limited by his mental health problems and intellectual disability that his nearly ten-year delay in filing for asylum was reasonable under the circumstances." *See* Government Br. at 23–24. This is a reviewable, mixed question of law and fact; "[t]he issue is how the statute and regulation apply to those facts." *Husyev*, 528 F.3d at 1179; *see also Conner v. Heiman*, 672 F.3d 1126, 1130 n.1 (9th Cir. 2012). We have jurisdiction to evaluate the inferences that may be drawn from Alvaro Arcos's undisputed diagnoses, and may therefore review whether the IJ correctly found that no extraordinary circumstances excused his late asylum application. *See Viridiana v Holder*, 646 F.3d 1230, 1234 (9th Cir. 2011).

I do agree, however, that Alvaro Arcos cannot prevail on his asylum claim. Although I would hold that we have jurisdiction to review the agency's extraordinary circumstances determination, I would dismiss the claim because Alvaro Arcos has not established that the ten-year delay in filing his asylum application was "reasonable under the circumstances." 8 C.F.R. § 1208.4(a)(5)(i)–(ii).

*Withholding of Removal*

Contrary to the majority, I would vacate and remand Alvaro Arcos's withholding-of-removal claim because the BIA's ultimate determination on this

2

claim was not supported by substantial evidence. The single police officer's response to Alvaro Arcos's attack in 2000—taken in isolation—does not amount to "substantial evidence" supporting the conclusion that the Mexican government was unable or unwilling to control persecution against Chol Mayans.

The BIA and the IJ erred in relying "exclusively" on the police report. *See Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010) ("[F]ocusing exclusively" on a police report can be error because "even if [the petitioner's] ability to file a police report suggests that the police were *willing* to protect" an applicant, "that says little if anything about whether they were *able* to do so."). Alvaro Arcos's attack and the subsequent police officer's response indicate—at best—that the police were, on one occasion, willing to protect him. It does not indicate that they were able to do so; indeed, "[a]uthorities capable of taking a crime report may still be powerless to stop the persecution of which an individual complains." *Id.* (quotations omitted).

In addition to being the victim of a racialized attack, Alvaro Arcos recounted repeated, targeted abuse committed by private and state actors with impunity. He struggled to find work and maintain economic stability because he "didn't speak Spanish well and they could tell [he] was poor"; non-indigenous Mexicans in Chiapas "call[ed] [Chol Mayans] bad names, they called us animals . . . .This discrimination led to a cycle of poverty." Supp. Decl. of Virgilio Alvaro Arcos at

3

¶ 26[2]; Decl. of Rosendo Alvaro Arcos at ¶¶ 7–10; *see also Korablina v. I.N.S.*, 158 F.3d 1038, 1045 (9th Cir. 1998) (holding that the loss of an employment opportunity and career obstacles because of anti-Semitism amounted to race-based persecution).

On other occasions, police overtly encouraged the persecution directed toward Chol Mayans. Alvaro Arcos described one instance in which local police tortured and jailed an innocent indigenous man; in another, his father was jailed for a week "as a means to pressure him to give up his rights to [his] land." Supp. Decl. of Virgilio Alvaro Arcos at ¶ 14; Decl. of Rosendo Alvaro Arcos at ¶ 15. Alvaro Arcos's own family home was eventually burned to the ground, and the authorities "did nothing" to prosecute or charge those responsible. Tr. at 264. His grandfather warned him "that if the police came to Jerusalem" he "should not leave our house because the police could take [them] for any reason and would kill" them. Supp. Decl. of Alvaro Arcos ¶ 15. This fear was widespread and shared among Alvaro Arcos's community; the town "decided to build a wall" on the outskirts of the community to protect themselves from the police. *Id.* at ¶ 16.

---

[2] Record citations are to the Certified Administrative Record filed on June 22, 2018. "Supp. Decl." and "Exh." refers to Supplemental Declarations and Exhibits, respectively, filed with Alvaro Arcos's I-589 application, and "Tr." refers to the transcript of the hearings before the IJ.

The country reports and expert testimony submitted to the IJ further establish that the Mexican government "has historically either turned a blind eye" or "waged direct attacks" on Chol Mayans. Exh. J at 95, 100. The Department of State's 2015 Mexico Human Rights Report finds that indigenous groups "continue[] to report the country's legal framework did not respect the property rights of indigenous communities or prevent violations of human rights." Exh. F at 70. "[D]riven by the desire for land," police and paramilitary forces continue to violently remove large numbers of indigenous people from their land, forcing them to live in "protracted displacement" as a result. Exh. L at 108.

Indigenous people are often left without viable recourse for this displacement: "[i]n 2015," for example, "a court issued a judgment denying indigenous peoples land of which they were violently dispossessed by police "in order to benefit the political elites and transnational tourism companies[.]" Exh. M. at 116; *see Rahimzadeh v. Holder*, 613 F.3d 916, 923 (9th Cir. 2010) (noting that evidence that "the law and judiciary" do not provide effective means of addressing human rights abuses can establish governmental inability or unwillingness to provide protection); *In re S-A-,* 22 I. & N. Dec. 1236, 1238 (BIA 2000).

The majority correctly notes that persecution is not the same as discrimination. But these events amount to more than discrimination; they constitute "oppression which is inflicted" on Chol Mayans "because of a difference that the persecutor will not tolerate." *Hernandez-Ortiz v. I.N.S.*, 777 F.2d 509, 516 (9th Cir. 1985), *superseded by statute on other grounds*, Real ID Act of 2005, Pub. L. No. 109–13, div. B, 119 Stat. 231. The single event in which a police officer took Alvaro Arcos to seek medical treatment after a racially-charged beating does not meaningfully controvert the country reports, expert testimony, and individual anecdotes establishing the government's inability to protect him in the face of the persecution he has suffered. Despite this compelling record evidence, Alvaro Arcos will, when removed to Mexico, "return to this same state of exclusion, discrimination, and precarity; the one he left in search of a different life." *See* Decl. of Prof. Katherine Faydash at 28.

For the foregoing reasons, I respectfully dissent in part from the majority's disposition.