**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 7 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BYRON ENRIQUE DIAZ ESCOBAR, | No. 14-72243 |
| Petitioner, | Agency No. A075-715-907 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 9, 2019[**]
Pasadena, California

Before: O'SCANNLAIN, PAEZ, and OWENS, Circuit Judges.

Byron Diaz-Escobar, a native and citizen of El Salvador, petitions for review

of the Board of Immigration Appeals' (BIA) final removal order dismissing his

appeal from the Immigration Judge's (IJ) decision denying him asylum,

withholding of removal, and protection under the Convention Against Torture

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

(CAT).  As the parties are familiar with the facts, we do not recount them here.

We have jurisdiction under 8 U.S.C. § 1252.  We grant the petition in part, deny

the petition in part, and remand.

1.      Diaz-Escobar argues that his asylum application was timely because

he filed the application within a "reasonable period" after the Department of

Homeland Security (DHS) declined to renew his work authorization in 2006.

8 C.F.R. § 1208.4(a)(4)(ii).  A potential asylee may apply outside the one-year

deadline for asylum applications if the delay is justified by "either the existence of

changed circumstances which materially affect the applicant's eligibility for

asylum or extraordinary circumstances relating to the delay in filing."  *Id.*

§ 1158(a)(2)(D).

The denial of work authorization does not count as a changed circumstance

under § 1158.  Expiration of an applicant's legal immigration status may count as a

changed circumstance under § 1158, but work authorization is not a form of legal

status.  *See Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1103 (9th Cir. 2011)

(noting that work authorization does not alter an asylum applicant's legal status).

However, the government's grant and subsequent denial of work

authorization in this case may count as an extraordinary circumstance.[1]  Diaz-

---

[1]  The government contends that Diaz-Escobar waived his claim of extraordinary circumstances by failing to adequately argue the issue in his opening brief.  In fact, Diaz-Escobar's brief argues that the government's denial of his work authorization

2

Escobar received work authorization from June 24, 2000, until August 21, 2006, based on his father's pending asylum application. 8 C.F.R. §§ 208.7(a)(1), 274a.12(c)(8)(i). For as long as DHS continued to renew his authorization, Diaz-Escobar reasonably believed that he was still covered by his father's application and therefore that he did not need to file an application of his own. We remand so the BIA can consider whether Diaz-Escobar applied within a reasonable period after learning that DHS had declined to renew his work authorization.

2. To qualify for withholding of removal, an applicant must prove that "his or her life or freedom would be threatened in the proposed country of removal on account of" a protected ground. 8 C.F.R. § 1208.16(b). If a petitioner demonstrates that he has suffered persecution in the past, the BIA must presume that the petitioner would face future persecution on the same grounds. *See id.* § 1208.16(b)(1). The BIA held that Diaz-Escobar failed to establish past persecution, and Diaz-Escobar challenges that holding on appeal.

The BIA ignored evidence that Diaz-Escobar suffered serious and credible death threats. His father's asylum application, placed into evidence by Diaz-Escobar, described how guerilla fighters shot, kidnapped, and tortured the father because of his service in the Salvadoran military. During the kidnapping, the

qualified as both a changed and an extraordinary circumstance. Diaz-Escobar did not waive his claim of extraordinary circumstances. *See Barrios v. Holder*, 581 F.3d 849, 856 (9th Cir. 2009).

3

guerillas told Diaz-Escobar's father that they would kill his family if the father did not collaborate with the guerillas. Similarly, Diaz-Escobar testified that he witnessed guerillas from the same group torturing his neighbors shortly before he fled El Salvador. Soon after, guerillas sent letters to Diaz-Escobar's mother threatening to kill her if she and Diaz-Escobar did not leave their neighborhood. These acts of violence against Diaz-Escobar's family and friends suggest that the guerrillas "would not hesitate to carry out [their] threats" against Diaz-Escobar. *See Salazar-Paucar v. INS*, 281 F.3d 1069, 1074 (9th Cir. 2002).

Neither the IJ nor the BIA acknowledged Diaz-Escobar's allegations of torture—not even to question their credibility. Indeed, the IJ explicitly found Diaz-Escobar's testimony credible. *See Ladha v. INS*, 215 F.3d 889, 900 (9th Cir. 2000) ("[W]hen an alien credibly testifies to certain facts, those facts are deemed true."), *overruled on other grounds by Abebe v. Mukasey*, 548 F.3d 787 (9th Cir. 2008). When the BIA fails to consider evidence that is "directly relevant" to past persecution, this court may remand a petition for review so the BIA can properly consider that evidence. *Sumolang v. Holder*, 723 F.3d 1080, 1084 (9th Cir. 2013). Because of the BIA's failure to consider directly relevant and credible evidence, we remand Diaz-Escobar's claim of past persecution to the BIA.

3.    Diaz-Escobar contends that he faces persecution because of his membership in the particular social group of people returning to El Salvador from

4

the United States. He argues that gang members in El Salvador, wrongly believing that he brought money from the United States, would target him and his family for kidnapping and extortion. The class of aliens returning to their home country from the United States "is too broad to qualify as a cognizable social group." *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151–52 (9th Cir. 2010) (rejecting proposed social group of "returning Mexicans from the United States"). Because Diaz-Escobar failed to identify a protected ground for which he would face persecution in El Salvador, substantial evidence supports the BIA's denial of withholding based on future persecution

4.      Diaz-Escobar also appeals the BIA's decision denying CAT relief. Diaz-Escobar failed to demonstrate that he faces a "*particularized threat* of torture." *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (citation omitted). Instead, Diaz-Escobar presented "generalized evidence of violence and crime" in El Salvador, which is insufficient to warrant CAT protection. *Delgado-Ortiz*, 600 F.3d at 1152. Substantial evidence supports the BIA's decision to deny Diaz-Escobar's request for CAT protection.

**PETITION FOR REVIEW GRANTED IN PART, DENIED IN PART, AND REMANDED.**

5

*Diaz-Escobar v. Barr*, No. 14-72243

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

While I concur in Parts 3 and 4 of the Court's disposition, I must respectfully dissent from Parts 1 and 2.

I

With respect to Part 1, the Court asserts—entirely without precedent—that the Department of Homeland Security's provision of work authorization constitutes an "extraordinary circumstance" that exempts an asylum seeker from the requirement to file an application within a year of arriving to the United States. *Cf.* 8 U.S.C. § 1158(a)(2)(d); 8 C.F.R. § 1208.4(a)(5). As a result, the Court excuses Diaz-Escobar's years-long failure to file an asylum application and remands only so that the Board of Immigration Appeals (BIA) may consider whether the three months Diaz-Escobar took between the denial of his work authorization and the submission of his asylum application was "reasonable."

Diaz-Escobar has never contended—neither before this Court nor before the BIA—that the provision or denial of his work authorization constituted an "extraordinary circumstance" excusing his delay. As a result, we cannot consider such an argument. *See Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992), *as amended* (Oct. 8, 1993) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir.

2004) (holding that, in appeals from the BIA, this court lacks subject-matter jurisdiction over "a legal claim not presented in administrative proceedings below").

True, Diaz-Escobar made mention of the extraordinary-circumstances exception before the BIA and in his opening brief before this court; but his argument was that arriving to the United States as a minor was such an extraordinary circumstance.[1] He then argued that the denial of his work authorization was a *changed* circumstance, an argument the Court rightly rejects. As the majority notes, the two exceptions function differently and demand distinct analyses. *Compare* 8 C.F.R. § 1208.4(a)(4), *with* 8 C.F.R. § 1208.4(a)(5). Diaz-Escobar was well aware of the extraordinary-circumstances exception and chose not to contend that the work authorization was such a circumstance; we cannot make such an argument for him now.

II

---

[1] Contrary to Diaz-Escobar's view, arriving as a minor may not excuse his failure to file because the regulations specifically excuse only "*unaccompanied* minors," and Diaz-Escobar joined his father upon arrival. 8 C.F.R. § 1208.4(a)(5)(ii) (emphasis added). *See Mailoa v. Holder*, 510 F. App'x 576, 578 (9th Cir. 2013) (limiting the extraordinary-circumstances exception to unaccompanied minors); *see also Umirov v. Whitaker*, 760 F. App'x 17, 19 (2d Cir. 2019); *Ali v. Holder*, 434 F. App'x 342, 344–45 (5th Cir. 2011); *Tambaani v. Attorney Gen. of U.S.*, 388 F. App'x 131, 134 (3d Cir. 2010). Yet, even were we to grant that his age constituted an extraordinary circumstance, Diaz-Escobar filed his asylum application years after attaining adulthood, far beyond the "reasonable period" allowed by the regulations. 8 C.F.R. § 1208.4(a)(5); *Al Ramahi v. Holder*, 725 F.3d 1133, 1135 (9th Cir. 2013) (concluding that a "reasonable period" is presumptively no more than six months).

With respect to Part 2, the Court also grants Diaz-Escobar's petition in part and remands to the BIA because, in its view, the BIA failed "to consider directly relevant and credible evidence" of his claim of past persecution. Because the administrative record, considered in its entirety, fails to supply sufficient evidence of past persecution, I would agree with the BIA's disposition of the past persecution claim.

A

According to the Court, such "directly relevant" evidence of Diaz-Escobar's past persecution is contained in two accounts. First, Diaz-Escobar's father's asylum application chronicles how, when Diaz-Escobar was no more than eight years old, guerillas sought to turn Diaz-Escobar's father into a collaborator. The guerillas shot the father, kidnapped him, and told him that his family would "suffer the consequences." Second, Diaz-Escobar testified before the IJ that he witnessed guerillas torturing his neighbors and that those guerillas sent his mother a death threat. Yet nothing in the IJ or BIA's decisions indicates that either body failed to *consider* such evidence. Indeed, the BIA noted that Diaz-Escobar's father was told "his family members could come to harm if he should fail to cooperate," and the IJ

3

described how Diaz-Escobar "witnessed his neighbors being tortured" by guerillas and that those guerillas sent his mother death threats.[2]

B

Nor did the IJ or BIA draw an erroneous conclusion from such evidence. In order to qualify as persecution, unfulfilled threats must be "so menacing as to cause significant actual 'suffering or harm.'" *Lim v. I.N.S.*, 224 F.3d 929, 936 (9th Cir. 2000) (quoting *Sangha v. I.N.S.*, 103 F.3d 1482, 1487 (9th Cir. 1997)). Threats that are "anonymous, vague, and [do] not create a sense of immediate physical violence" do not rise to the level of persecution. *Nahrvani v. Gonzales*, 399 F.3d 1148, 1153 (9th Cir. 2005). As the Court concedes, the threats against Diaz-Escobar were never fulfilled, were anonymous, were made to Diaz-Escobar's mother (and not to him), and were sent by mail. The threats were also vague.[3] Under our precedents, such threats do not constitute persecution. Nor does the violence faced by Diaz-Escobar's father—which occurred while the father was away from the family—convert such threats to persecution. By contrast, *Salazar-Paucar v. I.N.S.*, 281 F.3d 1069 (9th

---

[2] Hence, contrary to the majority's assertion, the IJ did "acknowledge[ ] Diaz-Escobar's allegations of torture."

[3] The letters to Diaz-Escobar's mother included a threat to kill her, but the record is conspicuously silent as to whether such letters threatened Diaz-Escobar. In addition, the Court erroneously states that "the guerillas told Diaz-Escobar's father that they would kill his family." There is no indication the guerillas made such a specific threat. The father's asylum application says merely that he was told his family would "suffer the consequences." Hence, if Diaz-Escobar was threatened at all, the administrative record does not indicate that such a threat was specific.

Cir. 2002), on which the Court relies, considered threats that did "create a sense of immediate physical violence." *See Nahrvani*, 399 F.3d at 1153. The guerillas in *Salazar-Paucar* targeted the petitioner because of his civic position, specifically threatened death, executed the petitioner's political allies, came to the petitioner's house, broke down his door, and beat his parents when they could not find him. *Salazar-Paucar*, 281 F.3d at 1071, 1074–75. The vague threats that Diaz-Escobar indirectly experienced created general fears, not a similar sense of *immediate* physical violence.

## C

The BIA did not err in excluding certain evidence from consideration. Hence, remand on the basis of *Sumolang v. Holder* is inappropriate. 723 F.3d 1080, 1083–84 (9th Cir. 2013) (remanding because the IJ and BIA each made a legal error that led each to exclude directly relevant evidence). Rather, the BIA correctly concluded that the vague and indirect threats Diaz-Escobar describes do not rise to the level of past persecution.

## III

Therefore, I would deny the petition in its entirety.