**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NELSON ANDRADE-GARCIA, *Petitioner*, v. LORETTA E. LYNCH, Attorney General, *Respondent.* | No. 13-74115 Agency No. A205-937-826 ORDER AND AMENDED OPINION |

On Petition for Review of an
Immigration Judge's Decision

Submitted March 9, 2016[*]
Pasadena, California

Filed April 29, 2016
Amended July 7, 2016

Before: Richard R. Clifton and Sandra S. Ikuta, Circuit
Judges, and Frederic Block,[**] Senior District Judge.

Order;
Opinion by Judge Ikuta

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Frederic Block, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[***]

### Immigration

The panel denied a petition for review of an immigration judge's decision affirming an asylum officer's negative reasonable fear determination in reinstated removal proceedings.

The panel held that this court reviews an IJ's negative reasonable fear determination for substantial evidence, and applying that standard concluded that petitioner failed to establish a reasonable possibility of torture, because he did not show that Guatemalan police were aware of gang extortion activities and breached their legal responsibility to stop it.

## COUNSEL

Marina Alexandrovich, Marina Alexandrovich, Esq., PLLC., Tempe, Arizona, for Petitioner.

Joyce R. Branda, Acting Assistant Attorney General, Civil Division; Blair T. O'Connor, Assistant Director; Scott M. Marconda, Trial Attorney; Office of Immigration Litigation, Washington, D.C., for Respondent.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# ORDER

The opinion filed April 29, 2016, is hereby amended as follows:  the last sentence on page 11 and continuing to page 12 of the slip opinion should be removed and replaced with the following:

> Although Congress has indicated its intent to delegate discretionary authority to the Attorney General to make visa and parole decisions,[4] *see, e.g.*, 8 U.S.C. § 1229 (initiation of removal proceedings); *id.* § 1229a (removal proceedings); *id.* §§ 1158, 1229b (relief from removal), Congress limited the Executive's discretion to impose a reinstated order of removal by precluding the Executive Branch from deporting aliens "to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture" and requiring the Executive Branch to promulgate regulations

---

[4] *See, e.g.*, 8 U.S.C. § 1182(d)(3)(A) ("[A]n alien . . . may, after approval by the Attorney General of a recommendation by the Secretary of State or by the consular officer that the alien be admitted temporarily despite his inadmissibility, be granted such a visa and may be admitted into the United States temporarily as a nonimmigrant *in the discretion of the Attorney General*." (emphasis added)); *id.* § 1182(d)(5)(A) ("The Attorney General may, except as provided in subparagraph (B) [excluding refugees "unless the Attorney General determines that compelling reasons . . . require that the alien be paroled"] or in section 1184(f) of this title [excluding crewmembers in certain labor disputes], *in his discretion* parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." (emphasis added)).

> to implement this obligation under CAT, *see* FARRA, Pub. L. No. 105–277, Div. G., Title XXII, § 2242(b), 112 Stat. 2681–822 (Oct. 21, 1998); *see also* 8 C.F.R. §§ 208.18, 1208.18. An alien with a reinstated removal order may be eligible for other forms of relief as well, including withholding of removal. *See Fernandez-Vargas*, 548 U.S. at 35 n.4.

With the foregoing amendment to the opinion, Respondent's petition for panel rehearing is **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained from this amendment.

## OPINION

IKUTA, Circuit Judge:

Nelson Andrade-Garcia petitions for review of the immigration judge's determination, in a reasonable fear proceeding, that he lacked a reasonable fear of torture and therefore is not entitled to relief under the Convention Against Torture (CAT) from his reinstated removal order. We have jurisdiction under 8 U.S.C. § 1252(a)(1). *See Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012). Contrary to the government's argument, our review of the immigration judge's determination is not limited to the question whether it was "facially legitimate and bona fide." *Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972). Rather, we review the decision for substantial evidence and now deny the petition.

I

The Immigration and Nationality Act (INA) provides for the expedited removal of an alien who was previously subject to a removal order but returned illegally to the United States. Under 8 U.S.C. § 1231(a)(5), if the government "finds that an alien has reentered the United States illegally" after being removed or departing under a removal order, "the prior order of removal is reinstated from its original date." *Id.*[1] In determining whether the alien may be removed under the reinstated order, an immigration officer must make three findings: (1) that the alien is subject to a prior order of removal, (2) that the alien is in fact the alien who was previously removed or voluntarily departed, and (3) that the alien unlawfully reentered the United States. 8 C.F.R. § 241.8(a).

If the immigration officer determines that the alien is properly subject to the reinstated removal order, the plain language of the statute precludes relief. *See* 8 U.S.C. § 1231(a)(5) (stating that the reinstated removal order "is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under [the INA], and the alien shall be removed under the prior order at any time after

---

[1] 8 U.S.C. § 1231(a)(5) states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

the reentry"). Despite this language, aliens are not barred from all relief. Given Congress's subsequent ratification of CAT, *see* Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105–277, Div. G., Title XXII, § 2242(b), 112 Stat. 2681–822 (Oct. 21, 1998); *see also* 8 C.F.R. §§ 208.18, 1208.18,[2] the Executive may not remove an alien subject to a reinstated removal order if it is more likely than not that the alien will be tortured in the country of removal. *See Ortiz-Alfaro*, 694 F.3d at 956 n.1 (assuming without deciding that an alien subject to a reinstated removal order may receive relief under CAT). Further, the Supreme Court has noted that an illegally returning alien subject to a removal order may seek withholding of removal under 8 U.S.C. § 1231(b)(3)(A), "[n]otwithstanding the absolute terms in which the bar on relief is stated" in § 1231(a)(5). *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006).

Because an alien subject to a reinstated removal order may be able to obtain CAT protection or other withholding of removal if eligible, the government has promulgated regulations providing administrative review of these claims. Under 8 C.F.R. § 241.8(e), if an alien "expresses a fear of returning to the country designated" in the reinstated order of removal, the alien must be "immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture." If the asylum officer concludes that the alien has demonstrated "a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership

---

[2] Many provisions of 8 C.F.R. § 208 and 8 C.F.R. § 1208 are identical, but section 208 was promulgated by the Department of Homeland Security and section 1208 was promulgated by the Executive Office of Immigration Review.

in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal," 8 C.F.R. §§ 208.31(c), 1208.31(c), the asylum officer must refer the case to an immigration judge (IJ), *see id.* §§ 208.31(e), 1208.31(e). These provisions are intended to give aliens subject to a reinstated removal order under § 1231(a)(5) the opportunity to seek withholding of removal and protection under CAT. *See* 8 C.F.R. § 241.8(e) (providing an exception to the immediate reinstatement of a removal order to allow an alien to seek withholding of removal); *id.* § 208.16 (providing for withholding of removal under 8 U.S.C. § 1231(b)(3)(B) and CAT); *see also* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999) (stating that the "new reasonable fear of persecution or torture screening process will ensure proper consideration of applications for withholding under [§ 1231(b)(3)] and under the Convention Against Torture, and of deferral of removal when appropriate, in cases subject to reinstatement of a previous removal order").

The alien may appeal an asylum officer's determination that there is not a reasonable possibility of persecution or torture to an IJ. 8 C.F.R. §§ 208.31(f)–(g), 1208.31(f)–(g). If the IJ concurs with the asylum officer's conclusion, the alien may not appeal the decision to the Board of Immigration Appeals. *Id.* §§ 208.31(g)(1), 1208.31(g)(1). If the IJ disagrees with the asylum officer, the IJ must give the alien a full hearing on the merits of the alien's withholding or CAT claim. *Id.* §§ 208.31(g)(2), 1208.31(g)(2).

II

Nelson Andrade-Garcia is a native and citizen of Guatemala who entered the United States illegally in 1998, 2005, and 2013. He was apprehended and ordered removed on June 19, 2013, and was removed a day later.

Two weeks later, on July 4, 2013, Andrade-Garcia reentered the United States again and was apprehended near the border. He conceded that he entered the country illegally and admitted that he had previously been removed pursuant to a removal order. The government issued him a notice of intent to reinstate the prior removal order. Andrade-Garcia expressed a fear of returning to Guatemala, so the government referred his case to an asylum officer for a reasonable fear hearing.

At the hearing, Andrade-Garcia testified that he had decided to return to the United States to avoid paying the members of a Guatemalan gang the 50,000 quetzals (about $6,500) that they demanded in phone calls to him. He stated he was afraid to return because the gang members had threatened to shoot him and cut off his arm. He believed this threat because they had killed his aunt three years before for not paying the money they demanded. Andrade-Garcia testified that the police had investigated his aunt's murder, but his cousin decided "not to do anything because she was already dead and they thought that they would not find anything out." In response to the asylum officer's questions, Andrade-Garcia testified that he had not been physically harmed, nor had he suffered any psychological or emotional harm. He also testified that he would not be harmed because of his religion, political opinion, membership in any group or organization, or family relationships. Further, he testified

that his parents, wife, and children remained in Guatemala and had not been physically harmed or threatened. Although Andrade-Garcia stated that he did not know of any connection between the gang members and the Guatemalan government, he speculated that the gang members are able to influence the police because the Guatemalan government is corrupt and he had seen cases where a robber is caught and then released the same day after bribing the police.

The asylum officer determined that Andrade-Garcia failed to demonstrate either a reasonable fear of future persecution on account of a protected ground or a reasonable fear of torture. On appeal, the IJ concurred with the asylum officer's determination. The IJ ruled that Andrade-Garcia failed to demonstrate a reasonable possibility of past or future persecution on account of a protected ground and did not demonstrate a reasonable possibility of future torture under CAT because he did not establish torture by the government or torture inflicted with the government's acquiescence.

Andrade-Garcia timely petitioned for review on the ground that the IJ erred in concluding that he had failed to demonstrate that the Guatemalan government had acquiesced in any torturous actions against him.

III

Although "[r]einstatement orders are not literally orders of removal," we have jurisdiction to review them under 8 U.S.C. § 1252(a)(1). *Castro-Cortez v. INS*, 239 F.3d 1037, 1044 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas*, 548 U.S. 30. We may therefore review "constitutional claims or questions of law" that are "raised in the context of reinstated removal orders." *Garcia de Rincon*

*v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1137 (9th Cir. 2008); *see also Villa-Anguiano v. Holder*, 727 F.3d 873, 875 (9th Cir. 2013). An IJ's negative determination regarding the alien's reasonable fear makes the reinstatement order final, *see* 8 C.F.R. § 208.31(g)(1), and thus subject to review under 8 U.S.C. § 1252. *See Villa-Anguiano*, 727 F.3d at 875; *see also Ortiz-Alfaro*, 694 F.3d at 958. Under § 1252, we may decide the petition for review "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). We review "factual findings underlying the [IJ]'s denial of CAT relief," as well as determinations for withholding of removal, for substantial evidence. *Vinh Tan Nguyen v. Holder*, 763 F.3d 1022, 1029 (9th Cir. 2014); *Garcia v. Holder*, 749 F.3d 785, 791 (9th Cir. 2014). Therefore, we must uphold the IJ's conclusion that Andrade-Garcia did not establish a reasonable fear of torture unless, based on the evidence, "any reasonable adjudicator would be compelled to conclude to the contrary." *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014).

The government argues that rather than reviewing the IJ's negative reasonable fear determination under § 1252 for substantial evidence, we should apply a more deferential standard and uphold the IJ's determination so long as there is a "facially legitimate and bona fide reason" for determining that Andrade-Garcia did not have a reasonable fear of persecution or torture. We disagree.

The "facially legitimate" standard of review sought by the government has been applied in a related, but different, context. The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*,

430 U.S. 787, 792 (1977) (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)). Congress has "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Mandel*, 408 U.S. at 766 (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). When Congress delegates this plenary power to the Executive, the Executive's decisions are likewise generally shielded from administrative or judicial review. *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986). As we have explained, "[t]he doctrine of nonreviewability of a consul's decision to grant or deny a visa stems from the Supreme Court's confirming that the legislative power of Congress over the admission of aliens is virtually complete." *Id.* at 970.

Despite these rulings, "courts have identified a limited exception to the doctrine [of consular nonreviewability] where the denial of a visa implicates the constitutional rights of American citizens." *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008). In *Mandel*, the Court considered the reviewability of the Attorney General's decision not to waive the inadmissibility of a Belgian revolutionary and therefore not to issue him a temporary visa to enter the United States. 408 U.S. at 766–70. Certain American citizens wishing to communicate with the Belgian revolutionary had challenged the Attorney General's denial on First Amendment grounds. *Id.* at 762. The Court indicated that a decision in this context was subject to only limited review: so long as the Executive exercises its broad authority "on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional

rights of American citizens. *Id.* at 770.**[3]**  Accordingly, we have held "that under *Mandel*, a U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision," and "[a]s long as the reason given is facially legitimate and bona fide the decision will not be disturbed." *Bustamante*, 531 F.3d at 1062*; see also Noh v. INS*, 248 F.3d 938, 942 (9th Cir. 2001) ("We need not decide whether the Secretary's [visa] revocation decision would be unreviewable in all cases, because the Secretary offered a facially legitimate and bona fide reason for revoking Noh's visa, namely that the visa had been obtained illegally, thereby rendering his decision in this case unreviewable.").  We have extended the reasoning of *Mandel* to adjudicate an official's decision to deny an alien's request to be granted temporary admission into this country by means of parole.  *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("[I]mmigration officials clearly have the authority to deny parole to unadmitted aliens if they can advance a facially legitimate and bona fide reason for doing so." (quoting *Jean v. Nelson*, 472 U.S. 846, 853 (1985))); *Mason v. Brooks*, 862 F.2d 190, 193–94 (9th Cir.

---

**[3]** The Court has applied the same test to Congress's direct exercise of its authority to admit or exclude aliens and will uphold "congressional policy choices in the immigration context" against a constitutional challenge if Congress has exercised its broad power "on the basis of a facially legitimate and bona fide reason." *Fiallo*, 430 U.S. at 793–95.  Following *Fiallo*, we have also applied the "facially legitimate" standard to constitutional challenges to immigration statutes.  *See An Na Peng v. Holder*, 673 F.3d 1248, 1258–59 (9th Cir. 2012) (applying the facially legitimate standard where an alien brought an equal protection challenge to a statute imposing a continuous-presence requirement on lawful permanent residents (LPRs) but not on non-LPRs); *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 978–79 (9th Cir. 2006) (applying the facially legitimate standard where an alien brought a due process challenge to a statute imposing a ten-year presence requirement for relief from removal).

1988) ("[A] rejection of parole will be upheld if the agency advanced a facially legitimate and bona fide reason for the denial.").

These principles are not applicable, however, to an alien's challenge to a reinstated order of removal. Although Congress has indicated its intent to delegate discretionary authority to the Attorney General to make visa and parole decisions,[4] *see, e.g.*, 8 U.S.C. § 1229 (initiation of removal proceedings); *id.* § 1229a (removal proceedings); *id.* §§ 1158, 1229b (relief from removal), Congress limited the Executive's discretion to impose a reinstated order of removal by precluding the Executive Branch from deporting aliens "to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture" and requiring the Executive Branch to promulgate regulations to implement this obligation under CAT, *see* FARRA, Pub. L. No. 105–277, Div. G., Title XXII, § 2242(b), 112 Stat. 2681–822 (Oct. 21, 1998); *see also* 8 C.F.R. §§ 208.18, 1208.18. An alien with a reinstated removal order may be eligible for other forms of relief as

---

[4] *See, e.g.*, 8 U.S.C. § 1182(d)(3)(A) ("[A]n alien . . . may, after approval by the Attorney General of a recommendation by the Secretary of State or by the consular officer that the alien be admitted temporarily despite his inadmissibility, be granted such a visa and may be admitted into the United States temporarily as a nonimmigrant *in the discretion of the Attorney General*." (emphasis added)); *id.* § 1182(d)(5)(A) ("The Attorney General may, except as provided in subparagraph (B) [excluding refugees "unless the Attorney General determines that compelling reasons . . . require that the alien be paroled"] or in section 1184(f) of this title [excluding crewmembers in certain labor disputes], *in his discretion* parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." (emphasis added)).

well, including withholding of removal. *See Fernandez-Vargas*, 548 U.S. at 35 n.4. And if the alien has met the relevant burden of proof, both CAT protection and withholding of removal are mandatory forms of relief. *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005) (CAT relief); *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) (withholding of removal).

Moreover, while Congress has limited courts' authority to review discretionary visa and parole decisions,[5] Congress has expressly provided for judicial review of a final order of removal. *See* 8 U.S.C. § 1252(a). Because we treat reinstatement orders as final orders of removal, *see Castro-Cortez*, 239 F.3d at 1044, reinstatement orders are subject to judicial review under 8 U.S.C. § 1252. *See, e.g.*, *Villa-Anguiano*, 727 F.3d at 875; *Ortiz-Alfaro*, 694 F.3d at 958.

Because there is no basis for holding that reinstated removal orders are subject to the consular nonreviewability doctrine, *see Li Hing of Hong Kong, Inc.*, 800 F.2d at 971, there is also no basis for limiting judicial review of the immigration judge's determination to the "facially legitimate and bona fide" standard. Accordingly, we review reinstated removal orders under the standard applicable to final orders of removal.

---

[5] *See* 8 U.S.C. § 1252(a)(2)(B) (stating that "no court shall have jurisdiction to review" certain denials of discretionary relief, including "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security").

IV

We now turn to the IJ's negative reasonable fear determination, and we conclude that substantial evidence in the record supports the IJ's conclusion that Andrade-Garcia failed to demonstrate a reasonable fear of torture. We therefore deny Andrade-Garcia's petition.

The regulations provide that, in accordance with the United States' obligations under CAT, "[t]he alien shall be determined to have a reasonable fear of persecution or torture if the alien establishes a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." 8 C.F.R. §§ 208.31(c), 1208.31(c); s*ee also id.* § 208.16(c) (implementing CAT). Under CAT, a person must demonstrate that the torture was "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Zheng v. Ashcroft*, 332 F.3d 1186, 1188 (9th Cir. 2003) (quoting 8 C.F.R. § 208.18(a)(1)) (emphasis omitted). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). Here, the IJ's determination that Andrade-Garcia had not shown that the police were aware of the gang's extortion activities and breached their legal responsibility to stop it was supported by substantial evidence. We have stated that a general ineffectiveness on the government's part to investigate and prevent crime will not suffice to show acquiescence. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034

(9th Cir. 2013).  By Andrade-Garcia's own testimony, the police actively investigated his aunt's death, but stopped that investigation in accordance with his cousin's decision because "they thought that they would not find anything out." The inability to bring the criminals to justice is not evidence of acquiescence, as defined by the applicable regulations.  *Id.* Nor does Andrade-Garcia's testimony that a Guatemalan police officer took a bribe from a robber and released him demonstrate that the government was aware of and acquiesced in the torturous activity that constitutes the basis for Andrade-Garcia's claim.  *See Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013) (official need not have "actual knowledge of the specific incident of torture" but must have "'awareness' of the torturous activity"); *Afriyie v. Holder*, 613 F.3d 924, 937 (9th Cir. 2010) (remanding for reconsideration of CAT claim when petitioner presented "evidence indicating that the government of Ghana was aware of the danger [he] was facing").  We have reversed agency determinations that future torture is not likely only when the agency failed to take into account significant evidence establishing government complicity in the criminal activity. *See, e.g.*, *Madrigal*, 716 F.3d at 510 (evidence that police officers and prison guards often worked directly on behalf of the cartels); *Zheng*, 332 F.3d at 1190–91 (petitioner personally saw smugglers give three cartons of cigarettes to police before they were allowed to board their boat in the harbor, and he often saw smugglers feasting and nightclubbing with local police).  Andrade-Garcia points to no such evidence here.

We therefore hold that substantial evidence supports the IJ's conclusion that Andrade-Garcia failed to demonstrate government acquiescence in torture sufficient to establish a reasonable possibility of future torture under CAT.

**PETITION DENIED.**