NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 3 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARCO MONTOYA, AKA Marco Montaoya, AKA Marco Tulio Montoya Muncada,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>Respondent. | No.   17-72293<br><br>Agency No. A200-431-965<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 1, 2020**
Pasadena, California

Before:  BEA and BADE, Circuit Judges, and Y. GONZALEZ ROGERS,*** District Judge.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*      The Honorable Yvonne Gonzalez Rogers, United States District Judge for the Northern District of California, sitting by designation.

Petitioner Marco Montoya ("Petitioner"), a native and citizen of Honduras, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an Immigration Judge's ("IJ") final order of removal. Petitioner argues the BIA erred in denying his application for withholding of removal under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We grant Petitioner's petition for review.

The BIA affirmed the IJ's determination that Petitioner testified credibly to past torture in Honduras by a gang that kidnapped, beat, and sexually assaulted him, and to credible extortion and death threats sent by the same gang to Petitioner at multiple homes as he moved to try to evade the gang. The IJ found Petitioner could not relocate anywhere in the country. The BIA affirmed the IJ's determination that Petitioner's expert witness Dr. Ungar was credible; he testified that the police in Honduras do not investigate extortion or kidnapping if the victim is released alive, and instead they allocate their limited resources to investigating murder. Dr. Ungar testified that the government of Honduras has attempted to combat gang violence and has reduced crime statistics for murder and drug trafficking, areas where they have focused their resources. However, the BIA determined that Petitioner was not eligible for withholding of removal under CAT,

2

because he had not shown that if he were returned to Honduras, he would more likely than not be tortured with the acquiescence of a public official.

The court reviews the BIA's decision in its entirety and the IJ's decision to the extent it was adopted by the BIA. *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018). The court reviews the agency's factual findings for substantial evidence and its legal conclusions de novo. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc) (citations omitted). Substantial evidence means the factual finding is "supported by reasonable, substantial, and probative evidence in the record." *Melkonian v. Ashcroft*, 320 F.3d 1061, 1065 (9th Cir. 2003). Under this standard, this court "may only reverse the agency's determination where 'the evidence compels a contrary conclusion from that adopted by the BIA.'" *Parada v. Sessions*, 902 F.3d 901, 908–09 (9th Cir. 2018) (quoting *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010)).

"To demonstrate eligibility for withholding of removal under the CAT, an alien must show that it is 'more likely than not' that a government official or person acting in an official capacity would torture him or aid or acquiesce in his torture by others." *Wakkary v. Holder*, 558 F.3d 1049, 1067–68 (9th Cir. 2009) (citing *Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir.2001); 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1)). The alien must show that "he would be subject to a

3

'particularized threat of torture.'" *Dhital v. Mukasey*, 532 F.3d. 1044, 1051 (9th Cir. 2008) (citation and emphasis omitted). Additionally, a petitioner must show that the torture was "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Zheng v. Ashcroft*, 332 F.3d 1186, 1188- (9th Cir. 2003) (quoting 8 C.F.R. § 208.18(a)(1)). Acquiescence is defined as the "willful blindness" of public officials "to the torture of their citizens by third parties." *Id*. at 1196.

"[T]he CAT regulations cast a wide evidentiary net, providing that 'all evidence relevant to the possibility of future torture shall be considered.'"

*Wakkary*, 558 F.3d at 1068 (quoting 8 C.F.R. § 1208.16(c)(3)). This includes:

> (i) Evidence of past torture inflicted upon the applicant;
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3). To show a particularized threat of torture, the alien must provide "evidence establishing 'substantial grounds for believing that he [or she] would be in danger of being subjected to torture' in the country of removal."

*Kamalthas*, 251 F.3d at 1284 (citing *U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment* art. 3, para. 1).

4

The agency found Petitioner testified credibly about the death threats and extortion attempts by the same gang that had kidnapped him. Further, the agency found Petitioner could not safely relocate anywhere in Honduras. The gang's threats were not idle threats. The kidnappers had shown they were willing to carry out the threats they made against Petitioner as they had kidnapped, tortured, and extorted him before, and then they tracked him down to continue to extort and threaten him.

The record evidence and the agency's factual findings compel the conclusion that Petitioner established he faces a particularized risk of torture if he is returned to Honduras.

To show acquiescence to torture by a public official, the alien must show that the official is aware of the activity and breaches his "legal responsibility to intervene to prevent such activity." *Zheng*, 332 F.3d at 1194 (quoting 8 C.F.R. § 208.18(a)(7)). The alien is not required to show that the official "knowingly acquiesced" to the activity or "willfully accepted" it. *Id*. The government's ineffectiveness in investigating and solving crime does not suffice to show acquiescence. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2013). The government's "inability to bring the criminals to justice is not evidence of

5

acquiescence, as defined by the applicable regulations." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016).

The BIA concluded that the police in Honduras may be ineffective at combating the crimes to which Petitioner has been subjected, but a showing of ineffectiveness is not sufficient to show acquiescence, and thus Petitioner had not met his burden. The IJ reached the same conclusion. However, whether the police are ultimately ineffective in investigating the types of crimes at issue here is less relevant than whether they attempt to do so. The agency found as a matter of fact that they do not make such attempts.

The IJ found Dr. Ungar credible, and he testified that the police in Honduras would not attempt to investigate the type of criminal activity at issue here. The salient point is the agency's finding, based on credible testimony, that the police do not investigate the types of crimes at issue here, even though they have effectively investigated other types of crime. Where the police have tried to investigate a crime, or would have investigated if they had sufficient information, the court has found that their ineffectiveness or failure to successfully complete the investigation does not amount to acquiescence. *See Andrade-Garcia*, 828 F.3d at 836 (police investigated the petitioner's aunt's death until the petitioner's cousin declined to proceed because he doubted the investigation would be successful); *see also*

6

*Garcia-Milian*, 755 F.3d at 1034 (petitioner reported to police that she had been beaten and raped, but police couldn't investigate because she only identified the perpetrators as masked men). However, where police were aware of tortuous conduct and turned a blind eye, the court has found acquiescence, even where the police did not have actual knowledge the petitioner had been tortured. *See Zheng*, 332 F.3d at 1192 (granting petition for review and remanding when the police were aware of human traffickers' operations and failed to stop them but may have lacked actual knowledge of the torture to which the victims were subjected).

Here, the question is not whether the police in Honduras would have been effective had they investigated. Rather, it is that the agency deemed credible expert testimony that the police in Honduras do not investigate the type of criminal conduct to which Petitioner was subjected. This constitutes acquiescence. *See Zheng*, 332 F.3d at 1192.

The court grants Petitioner's petition for review, vacates the BIA's decision, and remands this case to the BIA for further proceedings consistent with this decision.

**PETITION FOR REVIEW GRANTED.**