NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0445n.06

No. 20-3815

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 29, 2021
DEBORAH S. HUNT, Clerk

FAWZI SAMI ZAYA,

    Petitioner,

v.

MERRICK B. GARLAND, U.S. Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
OF AN ORDER OF THE U.S.
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW
IMMIGRATION COURT

Before: ROGERS, BUSH, and LARSEN, Circuit Judges.

PER CURIAM. Fawzi Sami Zaya petitions for review of an immigration judge's (IJ) determination that he did not have a reasonable fear of torture upon removal to Iraq. For the reasons stated, we GRANT the petition and REMAND for proceedings consistent with this opinion.

I.

Fawzi Sami Zaya, an Iraqi citizen born in Kuwait, came to the United States with his family when he was four years old. He has lived in the Detroit area since then. He has never been to Iraq and speaks only English. His wife, to whom he has been married for eighteen years, is a United States citizen. They have three children together. Zaya is a Chaldean Christian. Due to a combination of hemorrhaging spinal discs, spinal arthritis, and a stroke that permanently weakened his left side, he cannot walk and is in a wheelchair. Zaya also has a lengthy criminal history, culminating with a conviction for second-degree murder under Michigan law.

When Zaya finished his prison sentence, the Department of Homeland Security (DHS) initiated administrative removal proceedings against him under 8 U.S.C. § 1228. Zaya sought deferral of removal under the Convention Against Torture (CAT), the only relief available to him because of his criminal history. Because Zaya expressed a fear of being removed to Iraq, he was given a reasonable-fear screening interview before an asylum officer to determine whether there was a reasonable possibility he would be tortured in Iraq.

The asylum officer found Zaya credible but determined that he did not have a reasonable fear of torture. Zaya then sought review by an IJ who agreed with the asylum officer's conclusion. With no appeal being available before the Board of Immigration Appeals (BIA), *see* 8 C.F.R. § 208.31(g)(1), Zaya petitions this court for review of the IJ's decision.

II.

An alien facing removal may seek limited forms of relief under the CAT. When an alien facing administrative removal under 8 U.S.C. § 1228 expresses fear of returning to his native country, the first step is a "reasonable fear" screening interview. 8 C.F.R. § 208.31(a). An asylum officer interviews the alien, "in a non-adversarial manner, separate and apart from the general public." *Id.* § 208.31(c). An "alien may be represented by counsel or an accredited representative at the interview . . . and may present evidence, if available, relevant to the possibility of persecution or torture."[1] *Id.* An alien, however, has little time to amass such evidence, given that the interview must be conducted within "10 days of the referral" to the asylum officer. *Id.* § 208.31(b). After the interview, "[t]he asylum officer shall create a written record of his or her determination, including a summary of the material facts as stated by the applicant, any additional

---

[1] The form given to the alien (Form M-488, "Information about Reasonable Fear Interview") says nothing about the ability to present evidence.

facts relied on by the officers, and the officer's determination of whether, in light of such facts, the alien has established a reasonable fear of persecution or torture." *Id.* § 208.31(c).

If the asylum officer concludes that the alien has a reasonable fear of persecution or torture, the alien is given a second, more formal, hearing where he can fully present his claims to an IJ. *Id.* § 208.31(e). If, however, the asylum officer makes a "negative decision regarding reasonable fear," the alien can seek de novo review before an IJ. *Id.* §§ 208.31(g), 1003.42(d). If the IJ agrees with the asylum officer's negative decision, a final removal order will issue, and no appeal to the BIA is available. *Id.* § 208.31(g)(1). Instead, review lies directly in this court. *See* 8 U.S.C. § 1252(a)(1); 8 C.F.R. § 208.31(g)(1); *see also Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018); *Andrade-Garcia v. Lynch*, 828 F.3d 829, 833 (9th Cir. 2016).

Several open questions complicate our review. First, what standard governs our review of the IJ's decision? Our circuit has not said. The government says we should ask only whether the IJ gave a "facially legitimate and bona fide reason" for his decision. *See Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). Zaya instead asks us to apply the substantial-evidence standard, the standard adopted by the two circuits that have decided the issue. *See Romero v. Att'y Gen. U.S.*, 972 F.3d 334, 340 (3d Cir. 2020); *Andrade-Garcia*, 828 F.3d at 836.

Second, how onerous is the alien's burden at the reasonable-fear screening stage? Neither party directly engages this question, though it seems important to our review. According to the government, the screening interviews are designed to "quickly identify potentially meritorious claims . . . and to resolve frivolous ones with dispatch." Respondent Br. at 21 (alteration in original) (quoting 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999)). So perhaps the burden is not onerous at all. The only circuit to opine on the question has held that an alien need show only a "ten percent chance of future" torture to get past this stage. *See Bartolome v. Sessions*, 904 F.3d 803, 809 (9th

Cir. 2018) (quoting *Zhao v. Mukasey*, 540 F.3d 1027, 10291030 (9th Cir. 2008)). But we need not decide either the alien's initial burden or our standard of review because we must remand to the IJ regardless of the answers.

To pass through the screening stage and have an opportunity to fully present his claim for CAT relief to an IJ, Zaya had to establish a "reasonable possibility" of torture upon his removal to Iraq. 8 C.F.R. § 208.31(c). While we have yet to quantify that burden, we know that it is much lower than what Zaya ultimately would need to prove to be eligible for CAT relief—"that it is more likely than not that he would be tortured" in Iraq. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 294 (6th Cir. 2016) (quotation marks omitted).

Here, it is unclear what standard the IJ applied. When rendering his decision, the IJ explained to Zaya the "very high burden of proof to show that you would be subjected to torture," and noted that Zaya must show that "it is more likely than not that [he] would be subjected to torture." He then explained to Zaya: "I don't see that you have made a case for me to be able to say that it is more likely than not that you would be tortured." The IJ immediately followed up, however, saying, "Now, that's not the standard here today. The standard here today is did the Asylum Officer correctly analyze your case and come to the proper conclusion?" But the IJ's written order again leaned on the burden Zaya would ultimately have to meet to obtain CAT relief. The IJ explained that he "concur[red] in the DHS Reasonable Fear Determination because" Zaya was "only eligible for [Deferral of Removal] relief" and he was "unable to provide a basis to show likely to meet burden for that relief."

To the extent the IJ applied the more-likely-than-not standard, that was error. And to the extent he applied a hybrid standard, asking whether Zaya had demonstrated "a reasonable possibility that he could prove that it's more likely than not that he would be tortured" in Iraq, that

was also error. *Parra-Perez v. Garland*, __ F. App'x __, 2021 WL 3015114, at *2 (9th Cir. July 14, 2021). The ultimate CAT standard—more likely than not—has no place in the screening process. Given the informal and abbreviated nature of the screening interview and subsequent IJ review, the regulations require a substantially lower hurdle for an alien to clear in order to receive "full consideration" of his claim for relief. *See* 8 C.F.R. § 208.31(c), (e). An alien "at the screening stage must establish solely a reasonable possibility of torture, not a reasonable possibility of what he or she might be able to prove down the line." *Parra-Perez*, 2021 WL 3015114 at *2.

To the extent the IJ did apply the reasonable-possibility standard, we must still remand because we are unable to discern why the IJ concluded that Zaya did not clear this bar. Courts have recognized that not much is required of an IJ when rendering a decision in a reasonable-fear proceeding. *See Bartolome*, 904 F.3d at 813–14. But at the same time, "there must be *something* for us to review." *Aucay v. Att'y Gen. U.S.*, 841 F. App'x 479, 481 (3d Cir. 2021) (quotation marks omitted). The IJ's statements or written order must do enough to "explain the reasons for the IJ's decision" to "allow [the appellate court] to engage in . . . meaningful review of that decision." *Id.*; *see also Scorteanu v. I.N.S.*, 339 F.3d 407, 412 (6th Cir. 2003).

In rendering his decision at the close of the hearing, the IJ acknowledged that the "Asylum Officer made some mistakes," including referring to Zaya as a "Calvin" instead of a Chaldean. The IJ also acknowledged that "[t]here were other similar mistakes in the interview," though we are not told what those mistakes were. Nonetheless, the IJ concluded that the asylum officer made no mistake in "the conclusion, the analysis that the officer went through in coming to a Decision in [Zaya's] case." On that basis, the IJ concluded that he "ha[d] to, based on the record here today, come to that same conclusion." Accordingly, the IJ "den[ied] the reasonable fear challenge and concur[red] in [the asylum officer's] analysis."

But the asylum officer provided no analysis. Though he reached a negative decision, he did not explain why. He found Zaya credible. But then the asylum officer merely checked one box indicating that Zaya had no reasonable fear of torture, and another box indicating that Zaya had no reasonable fear of torture because he had not established a reasonable possibility that he "would suffer severe physical or mental pain or suffering." The forms indicate that the officer was required to provide an "assessment" explaining the reasons for the negative decision; but no such assessment apparently exists. Accordingly, there was no analysis with which the IJ could concur.

Parsing the transcript of the IJ interview does offer some indication why the IJ concluded that Zaya had not shown a reasonable possibility of torture. At one point, the IJ challenged Zaya's fear of ISIS, noting that the Iraqi army had regained control of formerly ISIS-controlled territory. But that was only one aspect of Zaya's claim. Zaya also asserted that the Iraqi government itself was targeting Chaldean Christians, that his criminal conviction could make him a target, and that Chaldean Christians in Iraq face genocide. The IJ said nothing about these assertions at the hearing, and the IJ's written order offers no additional reasoning.

Neither the transcript of the hearing nor the written order explains why the IJ concluded that Zaya had not met his burden of showing a reasonable possibility of torture upon removal to Iraq. We are thus unable to engage in meaningful review of the IJ's decision. *See Aucay*, 841 F. App'x at 481. As a result, we grant Zaya's petition and remand to the IJ for reconsideration of its decision.[2]

---

[2] Nothing in this opinion should be read as an indication of our views on the merits of Zaya's claim.

* * *

We GRANT the petition and REMAND to the IJ for further proceedings consistent with this opinion.

* * *