**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 13 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EDWIN ALEXANDER MOLINA
HERNANDEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.    21-70569

Agency No. A213-612-126

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 11, 2022[**]
Pasadena, California

Before:  WATFORD and FRIEDLAND, Circuit Judges, and HELLERSTEIN,[***]
District Judge.

Edwin Alexander Molina Hernandez ("Petitioner"), a native and citizen of

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]   The Honorable Alvin K. Hellerstein, United States District Judge for the Southern District of New York, sitting by designation.

El Salvador, petitions for review of a decision of the Board of Immigration Appeals ("BIA") upholding the immigration judge's ("IJ") denial of his claims for withholding of removal and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. The BIA affirmed the IJ's decision without opinion, meaning that "the IJ's decision becomes the BIA's decision[,] and we evaluate the IJ's decision as we would that of the [BIA]." *Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004) (quotation marks omitted). We deny the petition for review.

Petitioner testified that he was targeted by gang members in El Salvador on account of his relationship with his cousin, with whom Petitioner lived. The cousin, an MS-13 gang member, had begun an affair with the wife of a member of a rival gang. Because of the affair, the rival gang's members wanted to kill Petitioner's cousin, and on three separate occasions, they approached Petitioner to ask about the cousin's whereabouts. In the course of these incidents, the gang members subjected Petitioner to beatings, threats, and other forms of physical abuse, asking questions about his cousin and stating that "they wanted someone to pay for what [the cousin] had done." The gang members never found or hurt the cousin, and about six weeks later, Petitioner and his cousin fled El Salvador together for the United States. Petitioner testified that, in 2019, his friends told him that the gang members "are still looking for [the cousin] to kill him."

2

The IJ denied Petitioner's claim for withholding of removal. The IJ held that Petitioner's particular social group—family members of the cousin—lacked social distinction and that, in any event, Petitioner had not established a nexus between the harm and a protected ground because the gang members targeted Petitioner only as a means of finding the cousin, not because they generally sought to harm the cousin's family. In the alternative, the IJ concluded that even if Petitioner had suffered harm on account of his membership in his cousin's family, it was not more likely than not that Petitioner's life or freedom would be threatened in the future. We think substantial evidence supports this alternative reasoning, and accordingly, we need not and do not reach the particular social group or nexus issues.

The record does not compel the conclusion that Petitioner would more likely than not suffer persecution in El Salvador, even if he relocated within the country. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) ("Under [the substantial evidence] standard, we must uphold the agency determination unless the evidence compels a contrary conclusion."). The IJ noted that the gang members targeted Petitioner because he lived in the same house as his cousin, who is now living in the United States, and that the record therefore suggested that Petitioner could safely relocate to another household or another area, particularly given that the cousin would remain in the United States. The IJ further noted that

3

no evidence in the record indicated that the gang distributed information about Petitioner to other gang members throughout the country. Although Petitioner testified that gang members would remember him because he was a semi-professional soccer player, the IJ found that assertion unlikely to be true given that about fifteen years had passed between the violent attacks and the IJ's adjudication of Petitioner's claims for relief. Finally, the IJ noted Petitioner's testimony that, since he and the cousin fled the country, the rival gang's members had not harmed any other members of the family who remained behind in El Salvador. We conclude that the IJ's determination was supported by substantial evidence in the record.

Substantial evidence also supports the IJ's determination that Petitioner is not eligible for CAT protection. The IJ concluded that Petitioner had not demonstrated that any torture would be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). The IJ noted that Petitioner had not reported any of the gang's criminal activity to the police and that it was therefore impossible to know whether the police would have acquiesced in his torture. Petitioner testified that the police are corrupt and that he feared they would collaborate with the gangs, based on news reports of collaboration that he had seen on television. He also submitted country conditions

4

evidence detailing the Salvadoran government's struggle to control gang violence in the country. Petitioner's evidence does not compel the conclusion, however, that the Salvadoran government would acquiesce in his torture. *See Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) (noting that "a general ineffectiveness on the government's part to investigate and prevent crime will not suffice to show acquiescence").

**PETITION DENIED.**