NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 21 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

YESENIA ELIZABETH AGUILAR DE
PALACIOS; JONATHAN VLADIMIR
PALACIOS AGUILAR; JOSE
ALEJANDRO PALACIOS AGUILAR,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 23-1256

Agency Nos.
A206-894-345
A206-894-344
A206-894-343

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 6, 2024[**]
Pasadena, California

Before: CLIFTON and COLLINS, Circuit Judges, and RODRIGUEZ, District
Judge.[***]

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Xavier Rodriguez, United States District Judge for the
Western District of Texas, sitting by designation.

Petitioners Yesenia E. Aguilar-De Palacios ("Ms. Aguilar"), and her two minor children (Jonathan and Jose), petition for review of the decision of the Board of Immigration Appeals (the "BIA") affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and Convention Against Torture ("CAT") protection. Petitioners are natives and citizens of El Salvador. Ms. Aguilar and Jonathan filed applications for asylum, for withholding of removal, and for CAT relief based on threats to their lives by members of the Mara Salvatrucha ("MS") gang. Jonathan was also a derivative beneficiary on his mother's application for asylum, as was Jose. *See Ali v. Ashcroft*, 394 F.3d 780, 782 n.1 (9th Cir. 2005) (stating that, unlike asylum, withholding of removal and relief under the Torture Convention "may not be derivative"). As the parties are familiar with the facts, we do not recount them further here. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

This court's "review is limited to the BIA's decision except where the IJ's opinion is expressly adopted." *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022) (citing *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000)). Where the BIA appears to rely on the IJ's reasoning, we look to the IJ's decision "as a guide to what lay behind the BIA's conclusion." *Bingxu Jin v. Holder*, 748 F.3d 959, 964 (9th Cir. 2014) (citation and internal quotation marks omitted).

This court reviews questions of law de novo and reviews the agency's

factual findings for substantial evidence. *Perez-Portillo v. Garland*, 56 F.4th 788, 792 (9th Cir. 2022). Under the latter standard, the agency's action should be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Dai v. Garland*, 9 F.4th 1142, 1144 (9th Cir. 2021) (citation omitted).

1.  Asylum and withholding of removal. To be eligible for asylum, a petitioner bears the burden of demonstrating a likelihood of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "To be eligible for withholding of removal, the petitioner must discharge this burden by a 'clear probability.'" *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021) (citation omitted); *see* 8 U.S.C. § 1231(b)(3).

Eligibility for asylum based on a well-founded fear of future persecution requires an applicant to satisfy both a subjective and an objective test. *Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998). Applicants satisfy the subjective test by credibly testifying that they genuinely fear persecution by their government, or private actors their government is unable or unwilling to control, on account of a statutorily-protected ground. *Id.* The objective component is satisfied where "credible, direct, and specific evidence in the record" supports a reasonable fear of persecution. *Id.* (citation omitted).

Petitioners argue that the BIA overlooked evidence that the Salvadoran government, even if willing to control MS, could not meaningfully protect its citizens in any part of the country from gang violence. This court has previously held that an agency commits legal error by "focus[ing] only on the . . . government's willingness to control" alleged persecutors and "not [the government's] *ability* to do so." *Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013) (emphasis in original) (remanding to allow the BIA to consider "significant evidence" that the Mexican government was unable to control Los Zetas).

"[W]here there is any indication that the [agency] did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence." *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011). Still, when reviewing the agency's analysis, the court presumes that the agency considered all of the evidence in the record, even if some evidence is not explicitly mentioned. *Hernandez v. Garland*, 52 F.4th 757, 770–71 (9th Cir. 2022). "And if evidence is neither 'highly probative [n]or potentially dispositive,' the [agency] need not expressly discuss it." *Id*. at 771 (citations omitted).

Although the IJ and BIA could have devoted greater attention to the efficacy of the Salvadoran government's gang-related initiatives, Petitioners have

not shown that the agency ignored evidence that might compel a contrary conclusion as to the government's ability to control violence by members of MS. The evidence of generalized violence in El Salvador does not compel the conclusion that the Salvadoran government is unable to control gang members in particular.

Petitioners mistakenly assert that these generalized conditions compel reversal of the BIA's decision because they are identical to the conditions cited in *J.R. v. Barr*, 975 F.3d 778, 783 (9th Cir. 2020). That case, however, is best understood as an analysis of the government's *willingness* to provide protection. *J.R.*, 975 F.3d at 783 ("Given its withdrawal of protection, the El Salvadoran government was, in fact, 'unwilling to protect' J.R." (citation omitted)). The country conditions cited in *J.R.* merely demonstrated that the gang was willing to use violence to advance its objectives, not that the government was unable to control gang violence. *See id.*

2.      CAT. "To establish entitlement to protection under CAT, an applicant must show 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Plancarte Sauceda*, 23 F.4th at 834 (quoting 8 C.F.R. § 1208.16(c)(2)). "The torture must be 'inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official

capacity or other person acting in an official capacity.'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(1)).

"Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). An applicant need not show that the entire foreign government would consent to or acquiesce in his torture; he need show only that "a public official" would so acquiesce. *Madrigal*, 716 F.3d at 509. "It is sufficient that the public official be aware that torture of the sort feared by the applicant occurs and remain willfully blind to it." *Id.*

"Evidence that the police were aware of a particular crime, but failed to bring the perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime." *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014). Rather, this court has reversed agency determinations as to acquiescence "only when the agency failed to take into account significant evidence establishing government *complicity* in the criminal activity." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) (emphasis added). Evidence of complicity must be sufficiently related to the particular sources of the applicant's likely torture. *See B.R. v. Garland*, 26 F.4th 827, 844 (9th Cir. 2022) ("For example, if the torture is

likely to arise from violence by the [MS-13] gang, the evidence must show public officials acquiesce in gang or specifically MS-13 torture.").

Substantial evidence supports the denial of CAT relief.[1]  While the country conditions evidence cited in Petitioners' briefing chronicles corruption, gang-affiliated crime, and violence throughout El Salvador, those generalized reports do not compel the conclusion that Jonathan is likely to be tortured by MS members with the acquiescence of government agents.  *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010).  Petitioners have not presented evidence of government complicity in MS gang activity in particular.  To the contrary, the country conditions evidence outlines the extensive measures that the Salvadoran government has taken to address gang violence and official corruption.  Even if those measures have had limited success, evidence that a government has been generally ineffective in preventing or investigating criminal activities does not raise an inference that public officials are likely to acquiesce in torture.  *Garcia-Milian*, 755 F.3d at 1034; *see also B.R.*, 26 F.4th at 845 ("troubling reports" that "on occasion some corrupt officials may turn a blind eye to cartel activity" could not overcome evidence that "the Mexican government,

---

[1] Petitioners have not contested the BIA's determination that Ms. Aguilar failed to challenge the IJ's denial of her application for CAT relief.

rather than being willfully blind to cartel violence and torture, actively combats and prosecutes cartel activity").

**PETITION DENIED.**