**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ZOYA GASPARYAN,

*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent*.

No. 08-73613

Agency No.
A099-824-314

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 17, 2013—San Francisco, California

Filed February 20, 2013

Before: J. Clifford Wallace, Jerome Farris,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Farris

# SUMMARY[*]

## Immigration

The panel dismissed in part and denied in part a petition for review of the Board of Immigration Appeals' denial of an asylum application as time-barred.

The panel held that because the underlying facts were in dispute it lacked jurisdiction to review the merits of the Board's determination that petitioner failed to establish extraordinary circumstances to excuse her untimely asylum application. The panel held that the Board did not err in failing to consider the three factors set forth 8 C.F.R. § 1208.4(a)(5), because those factors apply only after a petitioner has demonstrated extraordinary circumstances. The panel also explained that the three factors are conjunctive and thus petitioner's failure to meet the first two factors was dispositive.

## COUNSEL

Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for Petitioner.

Benjamin Mark Moss and Douglas E. Ginsburg, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington D.C., for Respondent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

FARRIS, Senior Circuit Judge:

Zoya Gasparyan, a native and citizen of Armenia, petitions for review of the Board of Immigration Appeal's denial of her asylum application as time-barred. Gasparyan originally entered the United States on a six-month visa, which she overstayed. More than a year later, she applied for asylum, withholding of removal, and protection under the Convention Against Torture. An immigration judge found her eligible for withholding of removal and CAT protection, but denied her asylum application for failure to meet the one-year filing deadline. *See* 8 U.S.C. § 1158(a)(2)(B). Gasparyan appealed the denial of asylum, arguing that her untimely application should be excused because she suffered from a mental illness that constitutes an extraordinary circumstance pursuant to 8 U.S.C. § 1158(a)(2)(D) and 8 C.F.R. § 1208.4(a)(5). The Board of Immigration Appeals denied the appeal. Although Gasparyan asserted that her delay in filing was due to mental health issues, the Board concluded that the primary reason for the delay was Gasparyan's lack of funds and inability to speak English.

Gasparyan appeals the Board's adverse extraordinary circumstances determination. Additionally, she contends that the Board erred by failing to analyze her extraordinary circumstances claim using the appropriate "three-part test" derived from 8 C.F.R. § 1208.4(a)(5). To the extent that Gasparyan challenges the merits of the Board's extraordinary circumstances determination, we dismiss the petition for lack of jurisdiction because the underlying facts are disputed. Further, the Board did not err in its application of the

regulations and we therefore reject Gasparyan's claim to the contrary.

## I.   Factual and Procedural Background

Gasparyan was born in Armenia and lived there throughout her childhood and adolescence. At the age of 19 she was sexually assaulted by a friend, whom she married shortly thereafter to avoid shaming her family. During their marriage, Gasparyan's husband repeatedly abused her.

On October 24, 2004, Gasparyan fled Armenia and entered the United States on a six-month visa. Initially she lived in Foster City, California with Gayane Topalian, a family friend and former neighbor in Armenia. She also lived in Palmdale, California with other family friends and distant relatives for short periods of time. Topalian wrote a letter to the INS on Gasparyan's behalf asking for an extension of her visa, but INS denied the request on August 24, 2005. Gasparyan planned for her sister to send money and come visit so she "could hire a lawyer and deal with [her] immigration status." However, Gasparyan's sister had a car accident and could not come or send money. When asked during her asylum hearing what she was thinking after receiving the denial of the extension, Gasparyan responded, "I was waiting for money to come so I could apply."

Gasparyan testified before an immigration judge that after her arrival in the United States she felt troubled and unsafe. She suffered from nightmares and other psychological trauma related to the domestic violence she endured. While living near Los Angeles, Gasparyan feared that her whereabouts might be leaked to her husband, given the large Armenian community in the area. Gasparyan spoke only Armenian and

Russian and thus was unable to communicate with anyone outside of the Armenian community. She rarely left the houses where she lived, though she did regularly attend an Armenian church.

In August 2005, the brother and sister-in-law of Gasparyan's husband invited her to live with them in San Mateo, California. Her previous host never asked her to leave, but Gasparyan agreed to move when her in-laws assured her that they would not tell her husband of her location. Gasparyan testified that her mental health quickly deteriorated because the trauma she suffered as a consequence of the domestic violence resurfaced while living with her husband's family. She repeatedly asked her in-laws to help her normalize her immigration status. However, they did not help and she did not apply for asylum during the year she lived with them.

In August 2006, immigration officials took Gasparyan and her in-laws into custody because of an immigration problem that her in-laws had. Thereafter, the Immigration and Naturalization Service initiated removal proceedings against Gasparyan, during which she applied for asylum, withholding of removal, and relief under the Convention Against Torture.

During the hearing before the immigration judge, Gasparyan called as a witness Dr. Paul Good, a clinical and forensic psychologist. Dr. Good had examined Gasparyan and diagnosed her with an anxiety disorder and testified that she had symptoms of post traumatic stress disorder stemming from the abuse she suffered at the hands of her husband. Dr. Good testified that pursuing a complex application process might be difficult for Gasparyan due to her mental disorders. He also testified that Gasparyan had informed him that she

delayed filing for asylum because of lack of money, her inability to speak English, and a sense of inhibition while living with her brother-in-law.

The immigration judge found that Gasparyan was eligible for withholding of removal and CAT protection based on the domestic violence she suffered. However, the immigration judge denied her application for asylum because she did not file within the one-year deadline and she was not so severely mentally disabled as to establish extraordinary circumstances excusing the untimely filing. The immigration judge held that "there [was] sufficient evidence in this record to establish that respondent was able to make decisions for herself" and that the reason she failed to file her application was "because she did not have the requisite funds to pay for the services of counsel to help her file that application."

Gasparyan appealed the denial of asylum. The Board dismissed her appeal. In so doing, the Board reasoned, *inter alia*, that although the forensic psychologist testified that Gasparyan might have trouble with a complex application process, he "earlier indicated that her primary reasons for not applying for asylum were a lack of funds and her inability to speak English." Thus, the Board held that Gasparyan failed to present extraordinary circumstances excusing her untimely asylum application.

## II. Discussion

Before addressing the merits of Gasparyan's petition, we must first determine whether we have jurisdiction to review the Board's extraordinary circumstances determination. Under the REAL ID Act of 2005, Pub.L. No. 109–13, div. B, § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (2005) (codified in

scattered sections of 8 U.S.C.), we have jurisdiction to review an extraordinary circumstances determination only with regard to constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(D); *Husyev v. Mukasey*, 528 F.3d 1172, 1178–79 (9th Cir. 2008). Questions of law include pure questions of law as well as "mixed questions of law and fact." *Husyev*, 528 F.3d at 1178–79. Mixed questions of law and fact refer to the application of law to "undisputed facts." *Id*.

## A. Jurisdiction to Review "Extraordinary Circumstances" Determination Based on Disputed Facts

To excuse her untimely asylum application, Gasparyan must establish that her psychiatric problems constituted extraordinary circumstances "directly related" to her delay in filing for asylum within the meaning of 8 U.S.C. § 1158(a)(2)(D) and 8 C.F.R. § 1208.4(a)(5). *See Singh v. Holder*, 656 F.3d 1047, 1054–56 (9th Cir. 2011) (discussing the "directly related" requirement and noting that "[t]he relevant inquiry is why [petitioner] delayed [her] application").

Gasparyan contends that "it can hardly be disputed" that her psychiatric problems were directly related to her failure to file for asylum within the one-year deadline. The record, however, establishes otherwise. Gasparyan testified before the immigration judge that she delayed filing for asylum not because of her psychiatric problems, but because she lacked the money to hire an attorney and initiate the process. Similarly, Dr. Good testified that Gasparyan had explained to him that her delay was due to lack of funds and the language barrier, in addition to psychological trauma. At the close of the hearing, Gasparyan's counsel asserted that her mental

disability was the cause of the delay, whereas the government argued that the primary reason for the delay was monetary. Thus, the record reveals that the relation between Gasparyan's mental disabilities and her failure to meet the one-year deadline was far from an "admitted or established" historical fact. *Husyev*, 528 F.3d at 1178.

The Board denied Gasparyan's extraordinary circumstances claim by resolving the underlying factual dispute and finding that her primary reasons for delaying her asylum application were lack of money and inability to speak English. Our jurisdiction to review mixed questions of law and fact is limited to instances where the underlying facts are "undisputed." *Id.* at 1178–79. Where the underlying facts are disputed, as they are here, we lack jurisdiction to review the Board's extraordinary circumstances determination. *See id.*; *see also* 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D). We, therefore, dismiss Gasparyan's petition challenging the merits of the Board's extraordinary circumstances determination for lack of jurisdiction.

### B. Legal Standard for Analyzing "Extraordinary Circumstances" Claim

Gasparyan argues that the Board erred as a matter of law by applying an incorrect legal standard when it failed to analyze her extraordinary circumstances claim using the requisite "three-part test." Whether the Board applied the correct legal standard is a question of law, *see Rodriguez-Rivera v. U.S. Dep't of Immigration & Naturalization*, 848 F.2d 998, 1001 (9th Cir. 1988), and thus we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D).

The three prongs of the test Gasparyan identifies are derived from 8 C.F.R. § 1208.4(a)(5), which states that extraordinary circumstances may excuse the filing of an untimely asylum application if the applicant can demonstrate:

> [1] that the circumstances were not intentionally created by the alien through his or her own action or inaction, [2] that those circumstances were directly related to the alien's failure to file the application within the 1-year period, and [3] that the delay was reasonable under the circumstances.

Gasparyan contends that the Board "made *no* findings" regarding any of the three factors listed in § 1208.4(a)(5) and therefore did not apply the pertinent regulation.

Gasparyan's argument fails. The three factors do not determine whether extraordinary circumstances existed, but rather, are criteria for assessing whether extraordinary circumstances may excuse an untimely asylum application. Before assessing the three factors, the Board must first determine that the alien's circumstances were, in fact, extraordinary. Section 1208.4(a)(5) contains a non-exhaustive list of circumstances that may be considered extraordinary, including "[s]erious illness or mental or physical disability." 8 C.F.R. § 1208.4(a)(5)(i). An alien's circumstances are "extraordinary" if they fall within one of the examples listed or are of a similar nature or seriousness. Only after the Board concludes that the alien has presented extraordinary circumstances must it consider the three factors to assess whether those extraordinary circumstances excuse the untimely filing of the asylum application. *See* C.F.R. § 1208.4(a)(5) ("Such circumstances *may* excuse the failure

to file within the 1-year period as long as the alien filed the application within a reasonable period given those circumstances." (emphasis added)).

The Board concluded that Gasparyan failed to present extraordinary circumstances, adopting the immigration judge's finding that Gasparyan was not so severely mentally disabled that she was unable to take responsibility to timely file her asylum application. Since the Board concluded that Gasparyan failed to present extraordinary circumstances, it was unnecessary for it to consider the three factors.

Even if the Board was required to consider the three factors, although the Board did not explicitly link each of its reasons for denying her extraordinary circumstances claim to one of the three factors in § 1208.4(a)(5), it did provide reasons that correspond to the factors listed in the regulation. For example, the Board noted that Gasparyan claimed that she delayed in applying for asylum because she was living with her husband's brother, which rekindled the emotional trauma caused by her abusive husband. However, the Board found that she chose to live there "entirely voluntarily, as she had a different place to live," to wit, with Gayane Topalian. This finding is linked to the first factor—that Gasparyan intentionally contributed to the circumstances allegedly causing her delayed filing. *See* 8 C.F.R. § 1208.4(a)(5). Similarly, the Board observed that Dr. Good testified that Gasparyan's mental disability would cause her to have difficulty with a complex application process such as asylum. Nonetheless, the Board remarked that Gasparyan had previously told Dr. Good that her primary reasons for delaying the application were a lack of money and the language barrier. Here, the Board was referring to the second factor—that Gasparyan's mental illness was not "directly

related" to the delay in her asylum application. *Id.* The three factors listed in 8 C.F.R. § 1208.4(a)(5) are conjunctive, and thus Gasparyan's failure to establish either of the first two factors is dispositive of her extraordinary circumstances claim. *Id.* (applicant bears burden of establishing first, second, "and" third factor). The Board applied the correct legal standard and gave legitimate reasons for its conclusion. *See id.* We deny Gasparyan's petition to the extent she seeks relief on this ground.

Additionally, Gasparyan contends that the Board committed legal error by basing its decision on extra-record information. S*ee Circu v. Gonzales*, 450 F.3d 990, 993–95 (9th Cir. 2006) (en banc). The record does not support Gasparyan's argument. No extra-record information was the basis of the Board's decision.

## III.    Conclusion

We DISMISS for lack of jurisdiction that portion of Gasparyan's petition that relies on disputed facts to challenge the Board's extraordinary circumstances determination. We DENY Gasparyan's petition to the extent she argues that the Board failed to apply 8 C.F.R. § 1208.4(a)(5) in denying her claim.

**DISMISSED in part, DENIED in part.**