**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARVIN MARTINEZ ALQUIJAY,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent*.

No. 20-70470

Agency No.
A088-709-286

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 11, 2022[*]
Pasadena, California

Filed July 27, 2022

Before: Sandra S. Ikuta, Jacqueline H. Nguyen, and
John B. Owens, Circuit Judges.

Opinion by Judge Ikuta

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY**

## Immigration

Denying Marvin Martinez Alquijay's petition for review of a decision of the Board of Immigration Appeals, the panel held that the BIA did not err in concluding that Martinez Alquijay failed to establish extraordinary circumstances to excuse his delay in filing his asylum application.

Martinez Alquijay missed the filing deadline for his asylum application by over three years and argued that he qualified for the extraordinary circumstances exception to the time limitation based on his "incapacity or legal disability" due to ignorance of the relevant immigration laws, his young age of 22 years old at the time of his arrival, his lack of English-language skills, and the stress he experienced from fleeing his home country. The panel concluded that none of the factors identified by Martinez Alquijay, either separately or in the aggregate, were of a similar nature or seriousness to the examples of extraordinary circumstances set forth in the regulation. 8 C.F.R. § 1208.4(a)(5). The panel held that the BIA therefore did not err in concluding that Martinez Alquijay failed to establish the presence of an extraordinary circumstance to excuse the delay in filing his asylum application.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Ramiro J. Lluis, Lluis Law, Los Angeles, California, for Petitioner.

Leslie McKay, Senior Litigation Counsel; Madeline Henley, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

IKUTA, Circuit Judge:

An applicant for asylum must generally file his application within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). There are exceptions to this deadline, including an exception if the applicant can show "extraordinary circumstances relating to the delay in filing an application." *Id.* § 1158(a)(2)(D). The applicable regulations list examples of the sorts of circumstances that qualify as extraordinary. 8 C.F.R. § 1208.4(a)(5). In this appeal, an applicant who missed the filing deadline for his asylum application by over three years argues that because he was ignorant of the relevant immigration laws, was 22 years old at the time of his arrival, lacked English-language skills, and was stressed because he had fled from his home country, his circumstances qualify as extraordinary. Because none of these circumstances "are of a similar nature or seriousness" to the examples of extraordinary circumstances in the regulation, *Gasparyan v. Holder*, 707 F.3d 1130, 1135 (9th Cir. 2013), we conclude that the Board of Immigration Appeals (BIA) did not err in concluding that the applicant

failed to establish the presence of an "extraordinary circumstance" to excuse the delay in filing his application.

I

Marvin Estuardo Martinez Alquijay seeks review of a decision of the BIA affirming the decision of an immigration judge (IJ) denying his claim for asylum.[1]

A

Before addressing the merits of Martinez Alquijay's case, we outline the applicable legal framework. As a general rule, an application for asylum must be filed "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Notwithstanding this rule, an application for asylum "may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General . . . extraordinary circumstances relating to the delay in filing an application." *Id.* § 1158(a)(2)(D). To qualify for this exception, an applicant must first demonstrate circumstances that qualify as "extraordinary." *Gasparyan*, 707 F.3d at 1135. The applicable regulations define "extraordinary circumstances" to "refer to events or factors directly related to the failure to meet the 1-year deadline." 8 C.F.R. § 1208.4(a)(5). The regulations provide a non-exhaustive list of such "extraordinary circumstances." *Id.*[2]

---

[1] We resolve Martinez Alquijay's other claims in a memorandum disposition filed simultaneously with this opinion. ___ F. App'x ___ (9th Cir. 2022).

[2] The regulations provide, in pertinent part, that extraordinary circumstances "may include but are not limited to:"

Once an applicant for asylum has demonstrated to "the satisfaction of the Attorney General" the existence of "extraordinary circumstances," 8 U.S.C. § 1158(a)(2)(D), "[t]he burden of proof is on the applicant to establish to the satisfaction of the asylum officer, the immigration judge, or the Board of Immigration Appeals that the circumstances were not intentionally created by the alien through his or her own action or inaction, that those circumstances were directly

(i) Serious illness or mental or physical disability, including any effects of persecution or violent harm suffered in the past, during the 1-year period after arrival;

(ii) Legal disability (e.g., the applicant was an unaccompanied minor or suffered from a mental impairment) during the 1-year period after arrival;

(iii) Ineffective assistance of counsel, [in certain conditions] . . .

(iv) The applicant maintained Temporary Protected Status, lawful immigrant or nonimmigrant status, or was given parole, until a reasonable period before the filing of the asylum application;

(v) The applicant filed an asylum application prior to the expiration of the 1–year deadline, but that application was rejected by the [Department of Homeland Security] as not properly filed, was returned to the applicant for corrections, and was refiled within a reasonable period thereafter; and

(vi) The death or serious illness or incapacity of the applicant's legal representative or a member of the applicant's immediate family.

*Id.* § 1208.4(a)(5).

related to the alien's failure to file the application within the 1-year period, and that the delay was reasonable under the circumstances," 8 C.F.R. § 1208.4(a)(5).

B

We now turn to the facts of this case. Martinez Alquijay is a native and citizen of Guatemala.[3] He worked on a banana farm in Guatemala and was also an assistant secretary for a union of banana workers. During union meetings in 2005, protestors wearing masks and holding weapons assembled outside of the meeting place. According to Martinez Alquijay, these protestors fired weapons and yelled that they were going to kill the union members. When the members left the meetings, protestors confronted the union's leaders. For example, after a meeting in October 2005, the five protestors who were present warned the union's leaders that if they did not "stop putting ideas in people's heads . . . there would be very serious consequences," and that they would kill as many union members as necessary. After this incident, Martinez Alquijay decided to flee Guatemala. In March 2006, Martinez Alquijay illegally entered the United States. At the time, he was 22 years old.[4] While in the United States, Martinez Alquijay was convicted of driving while intoxicated in July 2009. In March 2010, he was again convicted of

---

[3] The following narrative is taken from Martinez Alquijay's testimony before the IJ.

[4] According to Martinez Alquijay's testimony, while he was in the United States, one of the union leaders was killed in 2007, and the husband of a union member was killed shortly thereafter. In 2008, Martinez Alquijay's aunt was killed in a hit-and-run accident. His cousin was strangled to death in 2010. Of these victims, only the union leader had been a member of the union.

driving while intoxicated, as well as driving with a suspended license.

In November 2009, the Department of Homeland Security initiated removal proceedings against Martinez Alquijay, charging that he was removable as "[a]n alien present in the United States without being admitted or paroled." *See* 8 U.S.C. § 1182(a)(6)(A)(i). In October 2010, Martinez Alquijay filed an application for asylum, withholding of removal, and relief under the Convention Against Torture, stating that he feared persecution based on threats made to members of his labor union. Martinez Alquijay also requested voluntary departure.

In the immigration proceedings, the IJ noted that Martinez Alquijay filed his application for asylum more than one year after he entered the country in March 2006, and so there was "a one-year issue." Martinez Alquijay's counsel stated that he would look into this issue and submit a brief if there was an applicable exception to the one-year bar.[5] The following exchange also took place between Martinez Alquijay and his counsel.

> Counsel: Did you file for an application for asylum when you first entered the United States?
>
> Martinez Alquijay: No.
>
> Counsel: Is there a specific reason as to why?

---

[5] The record does not include any further brief on the one-year bar from Martinez Alquijay's counsel to the IJ.

> Martinez Alquijay: I wasn't aware, I didn't
> know about the laws, I just simply - I just fled
> the country.

Martinez Alquijay did not otherwise address the one-year bar.

The IJ denied all of Martinez Alquijay's claims for relief and his request for voluntary departure. With respect to Martinez Alquijay's application for asylum, the IJ stated that Martinez Alquijay "testified that he did not file for asylum within one year of his entry because he was not aware of the laws of the United States." However, the IJ concluded that "ignorance of the law is not an event or factor beyond [Martinez Alquijay's] control." According to the IJ, Martinez Alquijay's lack of diligence was not analogous to the circumstances listed in the regulations as exceptions to the one-year bar. Therefore, the IJ denied his application as untimely because it was filed more than three years after the one-year deadline set out in 8 U.S.C. § 1158(a)(2)(B).

The BIA denied Martinez Alquijay's appeal. The BIA held that the IJ properly found that Martinez Alquijay's ignorance of asylum laws upon entering the United States was not an "extraordinary circumstance" that could excuse his four-year delay in filing his asylum application. The BIA also rejected Martinez Alquijay's further argument on appeal that he was legally incompetent when he entered the United States because he was 22 years old and lacked English skills. Martinez Alquijay timely petitioned for review.

## II

### A

We have jurisdiction to review the question of law raised by Martinez Alquijay's appeal.  Under the Immigration and Nationality Act, "[n]o court shall have jurisdiction to review any determination of the Attorney General" relating to exceptions to the filing deadline contained in § 1158(a)(2). 8 U.S.C. § 1158(a)(3).  Nevertheless, we retain jurisdiction over "constitutional claims or questions of law."  *Id.* § 1252(a)(2)(D).  Reading these statutes together, we have concluded that we have jurisdiction "to review the BIA's legal determination that the undisputed facts in [a] case do not constitute 'extraordinary circumstances.'" *Toj-Culpatan v. Holder*, 612 F.3d 1088, 1090 (9th Cir. 2010) (per curiam). In other words, although we lack jurisdiction to review a BIA determination that "rests on the IJ's resolution of an underlying factual dispute," *Sumolang v. Holder*, 723 F.3d 1080, 1082 (9th Cir. 2013), we may consider whether the BIA erred in deciding that the undisputed facts raised by Martinez Alquijay did not constitute extraordinary circumstances.  *Id.*

### B

On appeal, Martinez Alquijay asks this court to reverse the BIA's determination that his delay in filing his asylum application was not justified by extraordinary circumstances. Martinez Alquijay argues that his youth, language barrier, ignorance of the legal requirement to file his application within a year, and stress from fleeing his home country, constitute a "form of incapacity or legal disability," and therefore qualifies as an extraordinary circumstance under the regulations.

The argument that Martinez Alquijay suffered under a legal disability points to one of the circumstances set forth in the applicable regulations. Under 8 C.F.R. § 1208.4(a)(5)(ii), "extraordinary circumstances" may include: "[l]egal disability (e.g., the applicant was an unaccompanied minor or suffered from a mental impairment) during the 1-year period after arrival."[6]  At the time this regulation was promulgated, *see* 62 Fed. Reg. 10312-01, 10339 (March 6, 1997) (previously codified as 8 C.F.R. § 208.4), the ordinary meaning of "legal disability" was a lack of ability or capacity to fulfill legal duties due to minority or cognitive issues. *See* DISABILITY, Black's Law Dictionary (6th ed. 1990) ("[Disability] is generally used to indicate an incapacity for the full enjoyment of ordinary legal rights; thus, persons under age, insane persons, and convicts are said to be under legal disability."). Because the regulation's examples are not exclusive, Martinez Alquijay's circumstances need not meet the definition of "legal disability" so long as they "are of a similar nature or seriousness." *Gasparyan*, 707 F.3d at 1135.

None of the factors identified by Martinez Alquijay, either separately or in the aggregate, "are of a similar nature or seriousness," *id.*, to the regulation's examples of legal disability. First, in providing an example of a person under a legal disability, the regulation gives the example of an "unaccompanied minor."   8 C.F.R. § 1208.4(a)(5)(ii). Because Martinez Alquijay was 22 years of age when he entered the United States, he does not meet this definition. Nor is a 22-year-old man considered unable to meet his legal duties, unless he suffers from some other disability, so

---

[6] Martinez-Alquijay does not argue that any other example listed in the regulation is applicable.

Martinez Alquijay's age is not of a similar nature to being a minor.

Martinez Alquijay also references his lack of English language skills. But we have held that the lack of such skills is not an "extraordinary circumstance" when the applicant "fails to explain how his inability to speak English is extraordinary for an alien nor how it prevented him from timely filing an asylum application in English, especially given that the government makes translators available to immigrants who do not speak or read English." *Toj-Culpatan*, 612 F.3d at 1091. We have also taken judicial notice of "the fact that many immigrants who come to this country do not speak English fluently." *Id.* Martinez Alquijay has not provided an explanation on either point, and so this circumstance is also not extraordinary.

Martinez Alquijay's argument that ignorance of the legal requirements for filing an asylum application is an "extraordinary circumstance" also fails. "As a general rule, ignorance of the law is no excuse." *Antonio-Martinez v. INS*, 317 F.3d 1089, 1093 (9th Cir. 2003) (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991)); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010) ("We have long recognized the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.'") (citing *Barlow v. United States*, 7 Pet. 404, 411 (1833)). We have applied this principle in the immigration context. In *Luna v. Holder*, we held that once a regulation setting a filing deadline was published in the Federal Register, all applicants were "presumptively deemed to have been given notice of the deadline." 659 F.3d 753, 760 (9th Cir. 2011). Therefore, the argument that the petitioner and other similarly-situated

applicants were ignorant of the deadline, "runs afoul of the rule that ignorance of the law is not an excuse where one has constitutionally sufficient notice." *Id.*; *see also Antonio-Martinez*, 317 F.3d at 1092–93 (indicating that an applicant's obligation to notify the INS of any change of address under certain circumstances was not excused by ignorance of the law). Because Martinez Alquijay's failure to act with diligence to determine applicable legal requirements is not a circumstance "of a similar nature or seriousness" to the examples listed in the regulation, *Gasparyan*, 707 F.3d at 1135, it does not constitute an extraordinary circumstance excusing the failure to file his asylum applicant by the one-year deadline.[7]

Finally, Martinez Alquijay does not explain how stress from fleeing his homeland constitutes an "extraordinary circumstance" analogous to those listed in the regulation. As in *Toj-Culpatan*, we may take judicial notice of "the fact that many immigrants who come to this country" seeking asylum from persecution are in a similar stressful situation. 612 F.3d at 1091. Martinez Alquijay does not argue that he has suffered stress in some unusual way that would rise to a level analogous to a "mental impairment," 8 C.F.R. § 1208.4(a)(5)(ii), or "[s]erious illness or mental or physical disability, including any effects of persecution or violent harm suffered in the past, during the 1-year period after

---

[7] For this reason, our unpublished dispositions have repeatedly rejected petitioners' claims that ignorance of the deadline for filing an asylum application is an "extraordinary circumstance." *See Velasquez-Carrillo v. Barr*, 812 F. App'x 435, 438 (9th Cir. 2020); *Argueta-Chavarria v. Barr*, 780 F. App'x 519, 520 (9th Cir. 2019); *Gochez v. Sessions*, 676 F. App'x 629, 629 (9th Cir. 2017); *Esquivel-Rubinos v. Sessions*, 700 F. App'x 633, 635 (9th Cir. 2017).

arrival," *id.* § 1208.4(a)(5)(i).**⁸**  Therefore, the BIA did not err in rejecting this argument.

Finally, Martinez Alquijay does not explain how, in the aggregate, his circumstances are different from the circumstances of many applicants who seek refuge in the United States, or "are of a similar nature or seriousness" to the examples of in the regulation, *Gasparyan*, 707 F.3d at 1135.  Accordingly, we conclude that the BIA did not err in determining that Martinez Alquijay's circumstances were not extraordinary.**⁹**     Therefore, we uphold the BIA's

---

**⁸** Even if Martinez Alquijay had raised such an argument on appeal, we would lack jurisdiction to address it because there are no undisputed facts that could form the basis of our review.  "[W]e have jurisdiction to review an extraordinary circumstances determination only with regard to constitutional claims and questions of law." *Gasparyan*, 707 F.3d at 1133. We do not have jurisdiction to review the agency's factual determinations; rather, our authority is limited to determining whether undisputed facts constitute "extraordinary circumstances." *Toj-Culpatan*, 612 F.3d at 1090. Whether Martinez Alquijay suffered stress that affected his ability to meet the one-year deadline is a factual question, and the IJ did not make any factual findings on this matter because Martinez Alquijay did not raise the issue to the IJ as an excuse for missing the one-year filing deadline.  In the absence of such factual findings, we have no basis for evaluating Martinez Alquijay's claim that his stress qualified as an extraordinary circumstance.

**⁹** Because the BIA rejected Martinez Alquijay's argument that his circumstances were extraordinary, the BIA did not need to consider the second step of the extraordinary circumstances analysis, which would require consideration of whether the circumstances were a product of Martinez Alquijay's own action, whether the circumstances were directly related to his failure to file the application by the deadline, and whether his failure to file the application was reasonable for the full four years he was in the United States. *See Gasparyan*, 707 F.3d at 1135.

determination that Martinez Alquijay failed to excuse his four-year delay in filing his application.

**PETITION DENIED.**