**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 29 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ELISEO AYALA-REZA, Petitioner, v. MERRICK B. GARLAND, Attorney General, Respondent. | No. 22-609 Agency No. A088-660-163 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 9, 2023
Seattle, Washington

Before: BEA and BRESS, Circuit Judges, and OHTA,[**] District Judge.
Partial Dissent by Judge OHTA.

1. Eliseo Ayala-Reza ("Petitioner"), a native and citizen of Mexico, petitions this court to review the Board of Immigration Appeals's ("BIA") decision. The BIA dismissed Petitioner's appeal from the Immigration Judge's ("IJ") order denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Jinsook Ohta, United States District Judge for the Southern District of California, sitting by designation.

under 8 U.S.C. § 1252. We deny the petition.

2. The parties are familiar with the facts of the case, so we do not recite them here. Given the BIA adopted the IJ's factual findings and upheld its decision, we review both decisions. *Bondarenko v. Holder*, 733 F.3d 899, 906 (9th Cir. 2013). All factual determinations are reviewed for substantial evidence. 8 U.S.C. § 1252(b)(4)(B). All legal conclusions are reviewed de novo. *Martinez v. Barr*, 941 F.3d 907, 921 (9th Cir. 2019). We have jurisdiction to review an IJ's determination whether the alien can file an untimely asylum application because he has satisfied the changed circumstances exception when the facts are undisputed. *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam). We review a changed circumstances determination for substantial evidence. *Id.*

3. Petitioner first argues that the BIA erred when it concluded that he is statutorily ineligible for asylum because he failed to file an asylum application within the one-year statutory deadline and has not shown changed circumstances to excuse his untimely filing. The BIA did not err. Petitioner acknowledges that the ongoing and consistent threats his family received from the Reza family while he has lived in the United States had existed prior to his last entry into the United States in 2008. "New evidence confirming what [the alien] already knew . . . does not constitute changed circumstances." *Budiono v. Lynch*, 837 F.3d 1042, 1047 (9th Cir. 2016).

Moreover, Petitioner's contention that the sexual assault of his daughter by an unknown assailant supports a finding of changed circumstances lacks merit. The BIA expressly adopted the IJ's factual finding that there was "no connection"

2

between the sexual assault of Petitioner's daughter and his claim for asylum arising from the threats from Juan Reza's family.[1] We lack jurisdiction to review this factual finding because Congress has stripped us of jurisdiction over factual determinations that support the agency's changed circumstances analysis. *Gasparyan v. Holder*, 707 F.3d 1130, 1133–34 (9th Cir. 2013). Because the agency found that the sexual assault of Petitioner's daughter lacked a nexus to his claims of persecution, the assault cannot be material to his eligibility for asylum and therefore cannot excuse his late filing. *See* 8 U.S.C. § 1158(a)(2)(D). Thus, Petitioner's application is untimely, and he is statutorily ineligible for asylum relief.

4. Petitioner next contends that he qualifies for withholding of removal. He argues that he suffered past persecution and that the government of Mexico would be unwilling or unable to protect him from future persecution if he were forced to return. Neither argument has merit.

Petitioner contends the agency erred because its finding that he was not subject to past persecution purportedly ignored the threats his family received from the Reza family.[2] This argument lacks merit. There is no evidence that the

---

[1] The BIA also found in the alternative that "even if his daughter's assailant was a Reza family member, . . . th[e] incident is a continuation of an ongoing threat and not a change in circumstances." Because the agency's factual finding that the sexual assault lacks a nexus to Petitioner's asylum claim forecloses his challenge to its changed circumstances determination, we do not address this alternative basis for the BIA's decision.

[2] Petitioner's briefing regarding past persecution challenges only the evidentiary weight the agency gave to the threats his family received from the Reza family.

Reza family followed through on any threats that were made. Unfulfilled threats are more akin to harassment than past persecution. *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003). And given Petitioner was not personally subject to harm, the Reza family's repeated use of empty threats to harass Petitioner's *kin* fails to amount to past persecution. *Cf. Sharma v. Garland*, 9 F.4th 1052, 1063 (9th Cir. 2021). This is bolstered by the fact that Petitioner relies heavily on threats made against his family in Mexico while he lived in the United States. *Tamang v. Holder*, 598 F.3d 1083, 1091–92 (9th Cir. 2010) ("[W]e have not found that harm to others *may substitute for harm to an applicant . . .* who was not in the country at the time he claims to have suffered past persecution there." (emphasis added)). Substantial evidence supports the agency's conclusion that Petitioner did not suffer past persecution.

Petitioner also argues that the Mexican government would not be willing or able to prevent the Reza family from persecuting him were he to return to Mexico. Petitioner's "unable or unwilling" argument lacks merit.[3] He conceded that the Mexican authorities arrested Juan Reza several months after Petitioner's father's murder, obtained a conviction, and sentenced Juan Reza to forty-three years. The bribe Petitioner paid to the local police is certainly evidence that the

---

[3] While we reject this argument on the merits, we note that Petitioner's briefing does not address the issue in any meaningful depth. An indiscriminate citation to nearly all of the appellate record that is "unaccompanied by analysis and completely devoid of caselaw" falls far short of what is required by the rules. *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007). Such briefing risks our holding that the party has forfeited the argument. *Id.*

*police* are ineffectual. But the Mexican government, via the local prosecutor, nonetheless took the significant step of bringing Juan Reza to justice. There is no evidence in the record that the prosecutor who successfully obtained Juan Reza's conviction and his forty-three-year sentence was bribed in the process. These competing facts reasonably support the agency's determination that the Mexican government would be able and willing to protect Petitioner were he to return to Mexico. *Afriyie v. Holder*, 613 F.3d 924, 931–34 (9th Cir. 2010) (holding that evidence of corruption in the alien's country of origin is only one factor to consider under the "unable or unwilling" prong of the persecution analysis), *overruled in part on other grounds by Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1070 (9th Cir. 2017) (en banc). Thus, notwithstanding the bribe, substantial evidence supports the agency's determination that the Mexican government would "control those individuals harassing" Petitioner's family: the Mexican government—beyond the corrupt police force—prosecuted and imprisoned Juan Reza for the murder of Petitioner's father. *Nahrvani v. Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005).[4]

Altogether, substantial evidence supports the agency's determination that Petitioner is not eligible for withholding of removal.

5. Finally, Petitioner contends that he is entitled to CAT relief. However,

---

[4] The Mexican government's follow-through in the prosecution of Juan Reza further undermines Petitioner's family's speculation that reporting the Reza family's harassing behavior would have been futile. *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064–65, 1064 n.1 (9th Cir. 2020).

Petitioner's brief does not challenge the BIA's determination that he has not "show[n] that it is more likely than not that *he* would be tortured in Mexico by or with the acquiescence of a public official." Thus, he has forfeited this argument. *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996). The failure to challenge this finding is fatal to Petitioner's CAT claim because the acquiescence of a public official is necessary for him to obtain relief under CAT. *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836–37 (9th Cir. 2016).[5]

**PETITION DENIED.**

---

[5] Even assuming Petitioner challenged acquiescence in his briefs, his CAT claim would still fail. Petitioner fails to demonstrate that the Mexican government would fail to intervene were Petitioner tortured. The record evidence in fact supports the opposite conclusion: as noted above, the Mexican government apprehended, prosecuted, and imprisoned Juan Reza. *See Andrade-Garcia*, 828 F.3d at 836 (holding that an unsuccessful police investigation into an alien's family member's death did not amount to government acquiescence, even when the record showed that criminals were known to bribe police officers).

OHTA, District Judge, dissenting in part:

I respectfully dissent in part.

First, I would find that the BIA applied incorrect law when it found that Petitioner failed to show changed circumstances. The sole statutory inquiry in determining whether new evidence constitutes changed circumstances is whether that evidence would "materially affect the applicant's eligibility for asylum[.]" 8 U.S.C. § 1158(a)(2)(D); *Fakhry v. Mukasey*, 524 F.3d 1057, 1063–64 (9th Cir. 2008). This Court has repeatedly emphasized that further evidence of an ongoing threat can materially affect asylum eligibility, and therefore constitute changed circumstances. *Fakhry*, 524 F.3d at 1063–64; *Singh v. Holder*, 656 F.3d 1047, 1053–54 (9th Cir. 2011); *Vahora v. Holder*, 641 F.3d 1038, 1044 (9th Cir. 2011) ("Our law does not require that 'changed circumstances' constitute an entirely new conflict . . . nor does it preclude an individual who has always feared persecution from seeking asylum because the risk of that persecution increases.").

The BIA applied an incorrect legal standard when it found that Petitioner's daughter's 2017 sexual assault was "not a change in circumstances" without analyzing whether this additional instance of violence would materially affect Petitioner's eligibility for asylum. Whether the BIA applied the correct legal standard is a question of law that we must review de novo. *Gasparyan v. Holder*, 707 F.3d 1130, 1134 (9th Cir. 2013); *Martinez v. Barr*, 941 F.3d 907, 921 (9th Cir. 2019). The BIA recited the disputed facts regarding the identity of the person who sexually assaulted Petitioner's daughter, and concluded that, regardless of

his identity, the sexual assault was not a change of circumstances because it was a continuation of an ongoing threat. Contrary to law, it did not examine whether this newest instance in a series of threats made to Petitioner's family would "materially affect [Petitioner's] eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D). By concluding that the 2017 sexual assault did not qualify as changed circumstances solely because it was a "continuation of an ongoing threat," the BIA applied the wrong legal standard. Accordingly, I would remand to allow the BIA to apply the appropriate legal standard.

Second, I would find that the record compels the conclusion that the Mexican government is unwilling to protect Petitioner because the police ignored more than twenty requests for protection and only arrested Juan Reza after the payment of a large bribe. The record shows that the municipal police first ignored Petitioner's father's reports that Juan Reza was threatening to kill the family. Juan Reza then murdered Petitioner's father in the street with a machete in front of multiple witnesses. Despite the public nature of this murder, the municipal police refused multiple requests to arrest Juan Reza. Petitioner's mother and sister then made over twenty trips to a neighboring municipality to obtain police intervention there, but the neighboring police refused to help until they were paid a bribe of approximately $3,000 dollars. Juan Reza was finally arrested nine months after murdering Petitioner's father, and was subsequently tried,

convicted, and incarcerated.[1]  Although my colleagues agree that the *police* are unable or unwilling, they nonetheless conclude that the Mexican government is willing to protect Petitioner because the *local prosecutor* secured Juan Reza's incarceration without a bribe.  I respectfully part with the majority's reasoning because the practical reality is that Juan Reza's case only reached the local prosecutor because the police arrested him, and the police only arrested him because a bribe was paid.  Even if true that the successful arrest, prosecution, and incarceration of Juan Reza supports the Mexican government's ability to protect Petitioner, there is nothing in the record supporting its willingness to do so absent the payment of a large bribe.  Our asylum laws were written to safeguard individuals whose governments are not willing *or* able to protect them.  8 U.S.C.A. § 1101(a)(42)(A); *J.R. v. Barr*, 975 F.3d 778, 782 (9th Cir. 2020).  To say that a government that will only act in the face of a bribe is "willing" to protect renders that portion of our laws illusory.  Therefore, I would find that substantial evidence does not support the agency's determination in this respect.

---

[1] Despite Juan Reza's incarceration, other members of the Reza family continued to threaten and harass Petitioner's family.  Petitioner's family testified that they did not report these threats because they were afraid, because the local police had previously and repeatedly refused to help, and because the neighboring police would not help unless paid.  Petitioner's country evidence also overwhelmingly supports the conclusion that the majority of crimes in Mexico go uninvestigated, the Mexican populace has little confidence in the police, and police corruption (including the soliciting of bribes) is commonplace.